EDNA A. SHAFER, Respondent, *v.* UTICA MUTUAL INSURANCE COMPANY, Appellant.

Fourth Department, June 30, 1936.

*Philip A. Sullivan,* for the appellant.

*Ernest S. Carnes [Alfred L. Hetzelt* with him on the brief], for the respondent.

TAYLOR, J. Defendant Utica Mutual Insurance Company appeals from a judgment of the Supreme Court, Erie county, entered December 2, 1935, in favor of the plaintiff in the sum of $4,391.30, and from an order denying defendant's motion for a new trial.

The plaintiff is the daughter of Harvey G. Shafer (hereinafter called " Shafer ") and was a passenger in a Marmon automobile owned and driven by him April 20, 1934. At the time of the accident to be later described Shafer was insured by the defendant.

At about ten-thirty o'clock P. M., Shafer was driving easterly on a highway just outside of Williamsport, Pa. Shafer's wife, Clara B. Shafer, sat in the front seat with him and the plaintiff occupied the rear seat alone. The road was a cement road and dry. When Shafer was about halfway up a slightly ascending hill and going about twenty-five miles per hour his car came into collision with a car owned by Charles Smith, who was driving westerly. Immediately thereafter Shafer's car came into collision with a car owned by Arthur Harris, who was driving in a westerly direction close behind Smith. To complete the transaction a fourth car owned and driven by one Robert Rakestraw, and following the Shafer car, came into collision with the Harris car.

The plaintiff brought an action against her father only for damages for personal injuries suffered by her. The action was brought to trial April 30, 1935, and the jury returned a verdict for plaintiff of $4,000. An execution was issued and returned unsatisfied. Plaintiff then brought this action against defendant insurance company under the provisions of section 109 of the Insurance Law. In this action the defendant admitted all the allegations of the complaint except the one that Shafer had duly complied with all the terms and conditions of the insurance policy. Defendant set up two affirmative defenses:

(1) That Shafer had failed to " co-operate," and (2) that Shafer had conspired with the plaintiff and another to defraud defendant.

I. The issue as to non-co-operation.

In the negligence action of the plaintiff against Harvey G. Shafer two principal questions of fact were involved, viz.:

(1) The position of the Shafer car at the time of the collision, and (2) the position of the Smith car at that time, with respect to the center line of the highway.

The record makes it clear that either Shafer or Smith, or both, were over the center line of the highway and that because of that fact the collision occurred. In her action against her father, as the case developed, it was necessary for the plaintiff to prove that when the accident occurred her father's car was over the line and on his wrong side of the highway.

A day or two after the accident, Shafer, without any solicitation from anybody, appeared at a branch office of the defendant in Newberry, Pa., and filled out and signed a statement on a printed form. Up to that time he had not seen or talked with any representative of the insurance company. As to this statement he testified: " Q. It was a voluntary statement on your part? A. Yes. I run my legs off to hunt them up. Q. You went up there to tell the truth? A. I absolutely did and I told the truth."

A copy of this report appears in the record as defendant's Exhibit A and contains the following: " Q. Do you think you were to blame? A. No. * * * Q. What side of the street were you on? A. Right. Q. On what side of the street was the other vehicle or party? A. Swerved to assured's side."

The following also appears: " Mr. Shafer was not at fault for accident, but wants same reported to you at once, so that you may advise what he should do. Shafer car traveling east on State highway with line of cars. Another car going west on highway tried to pass truck and swerved into the left front of Shafer car."

On May 14, 1934, Shafer signed an affidavit prepared by one Lewis, an investigator for the defendant. In this affidavit Shafer stated that the road was a two-lane thoroughfare of cement about twenty feet wide; that the weather was clear; that the road curved somewhat northerly, not a sharp curve, and was divided in the center by a new crack in the cement which was filled with tar; and that the front lights on his car were burning. He continued as follows: " My car was on its right side of the road, the south side. A large van with green lights westbound passed to my left only an instant when a car behind it, and later identified as the Smith car, from my observation, was going to pass the van. * * * I could see the crack in center of road as I drove along and am

sure that I was south of the center of road. I could see that line at all times."

In September, 1934, Shafer was served with the summons and complaint in his daughter's action against him. He delivered the policy and the papers in suit to a representative of the defendant and stated at that time that he thought he was on the right side of the road and that he was going to stand on that proposition, and on the trial of this action Shafer testified that he saw nothing in the said affidavit that he would not say now; also that it was a fair, proper and right statement of how the accident happened.

The trial of the action of the plaintiff against Shafer was set down for April 29, 1935. The attorneys for the insurance company, who had appeared for and represented Shafer in that action, notified him of the date of the trial by registered letter dated April twenty-third, and requested his attendance at their office April twenty-fifth to prepare the case for trial. Shafer complied with this request and a conference then took place between Shafer and one of the attorneys for the insurance company, the details of which were excluded by the trial court on the ground that they were in the nature of a privileged communication. Immediately after this conference the defendant disclaimed liability under the policy and notified Shafer to that effect. At the same time its attorneys withdrew from the case. Shafer then retained other counsel and the case was tried April 30, 1935, as above stated. In that trial Shafer was sworn as a witness in his own behalf and testified as follows:

1. As to the position of his own car: " Q. What I am getting at is, immediately before any collision occurred whatever, do you know where the left portion of your car was? A. I couldn't positively say as I was — I believe that I was on the right, over on my own side. Q. Do you mean you believed at that time you were on the right? A. Yes, I honestly believed that I was on the right. Q. Your car had good lights? A. Yes. * * * Q. So that I understand you to say, finally, Mr. Shafer, that you cannot tell whether you were over that line or not? A. I couldn't say positively."

2. As to the position of the Smith car Shafer testified: " Q. Did you observe the position of the oncoming Smith car, with reference to its location on the highway? A. It appeared so quick, after this other car, it seemed to be right on me, like that. Q. You mean by that, that you cannot tell exactly where that car was? A. I couldn't tell. It just happened, the other car had passed me, going down hill, and the next instant we collided, that's all."

On cross-examination he testified: " Q. I will ask you, Mr. Shafer, whether or not, at any time did you see this Smith car on his left side of the highway, or on your side? A. No, I could not say that I did. * * * Q. I mean, you — did you ever, at any time, see the Smith car on your right side of the highway? A. In fact, I didn't see the Smith car until we came together."

From this surprising statement the jury could readily infer that Shafer was so negligent that he was not even observing traffic ahead of him.

It is apparent from the information furnished by Shafer in the report and affidavit that the defendant could have fairly concluded that Shafer had a good defense to any action which might be brought against him. It is equally clear that if Shafer in his report and affidavit had disclosed that he could not say positively where he was on the highway; that he did not see Smith at any time on the left of the center line; that he did not see him try to pass the van and did not see him swerve to the left in front of the Shafer car; in fact, that he did not see him at all until the moment of impact, the defendant would have had an entirely different picture of the accident and of Shafer's responsibility for it. On the issue of co-operation it was Shafer's obligation not only to make a " truthful statement of the cause of the accident " (*Seltzer* v. *Indemnity Ins. Co. of North America*, 252 N. Y. 330, 335) but to make " a fair and frank disclosure of information reasonably demanded by the insurer to enable it to determine whether there is a genuine defense." (*Coleman* v. *New Amsterdam Casualty Co.*, 247 N. Y. 271.)

In the report and affidavit Shafer stated in effect that he knew the location of his car. Its location in the highway was a fact within his personal knowledge. There could be no mistake about it, for the locus was fixed with reference to the center line of the highway which was " at all times " clearly visible. The night was dark but the headlights showed the crack in the pavement. His position at the wheel gave him an unobstructed view of it. Shafer was clearly describing a fact within his personal knowledge when he located his car with reference to the center line of the pavement and wholly south of it. This testimony is not of the same class as testimony with reference, for instance, to the speed of a car, which is usually based upon the opinion of the witness and not upon actual knowledge. As to such opinion evidence, it is conceivable that a witness might be mistaken and might want to change his testimony after listening to other witnesses who differed from him. But as to the location of his car in the highway there was no room for change of opinion. His statement as to his position with reference to the center line of the highway was based upon his

personal observation and knowledge. If Shafer did not know that he was wholly south of that center line he did not make a truthful statement to the defendant when he said that he was; he was not making the fair and frank disclosure required of him. If he told the truth when he said positively that he was south of the center line, he faltered on the witness stand when he said that he could not say positively whether he was over the line or not, thereby lending credence to the testimony of his wife and this plaintiff to be referred to later, to the effect that Shafer's handling of his car caused the accident.

Similarly his statement that Smith tried to pass the van and in doing so swerved to the left was a statement of fact based upon his personal observation and not an expression of opinion. If Shafer was south of the center line, as he claimed to the insurer, Smith could not have swerved into the Shafer car without crossing the line. If Shafer deceived the insurer on this point, he was not co-operating. If he told the truth, if he actually saw the Smith car attempt to pass the van and swerve to the left into his own car, he departed from the truth on the witness stand when he said that he did not see the Smith car on the wrong side of the highway and did not see it at all until the moment of impact. Whether or not Shafer's co-operation would have helped the defendant is not material.

" Co-operation with the insurer is one of the conditions of the policy. When the condition was broken, the policy was at an end, if the insurer so elected. The case is not one of the breach of a mere covenant, where the consequences may vary with fluctuations of the damage. There has been a failure to fulfill a condition upon which obligation is dependent." (*Coleman* v. *New Amsterdam Casualty Co.*, 247 N. Y. 271, 276.)

The covenant to co-operate was broken. If Shafer deviated from the truth in his conferences with his insurer, he failed at the outset to co-operate. (*Coleman* v. *New Amsterdam Casualty Co., supra.*) If he thus deviated on the witness stand he had ceased to co-operate. (*Ohrbach* v. *Preferred Accident Ins. Co.*, 227 App. Div. 311.) The verdict of the jury that Shafer was co-operating is decidedly against the weight of the evidence in the case.

II. The conspiracy claim.

The accident occurred April 20, 1934. On the sixteenth day of May, Clara B. Shafer, wife of Harvey G. Shafer, and mother of the plaintiff, swore to an affidavit in which she said: " My husband was driving not very fast, and I would say 20 to 25 miles per hour, altho I had not looked at the speedometer. I do know that he was driving very carefully and at the time the car was hit, it was

on our right side of the road. I cannot say in just what position on the road our car was, in relation to the center line or the edge to our right side of the road, but I can swear that the car was to our right of the center of the road."

She further said: " It looked to me that as soon as the van came very closely to us, that the Smith car and the Harris car cut out somewhat towards our side of the road, as if to pass the van. The van cleared us, the Smith car was very closely behind the van, and the left side of it was over the center line in the road, on our side, and hit the left front end of our car. * * * My husband was driving carefully and could not prevent the accident. The two accidents were caused by the Smith car, whose driver pulled his car on our side of the road, causing both accidents."

On the trial of the action of the plaintiff against Shafer, Clara B. Shafer testified as follows: " Q. Just before this collision occurred what did you notice, if anything, about the operation of your car? A. Well, Mr. Shafer seemed to be gliding toward the left-hand side and I called to him; I said, ' Daddy, get over. Get over to your right side,' and then the car — we struck, and then the other car — the two collisions were just one right after another, just a few seconds between. Q. Just before this collision occurred you say that you cautioned Mr. Shafer to get over on his side of the highway? A. Yes, I did. Q. Now, at the time the collision occurred, was your car to the left, to your left of the center of the highway? A. Well, yes, I would say it was, some. That was the reason that I called to him to get over on his right side. * * * Q. Where was the Smith car running on the highway? A. Well, it was coming west on the highway. * * * I think, really, that he was on his right side, the proper side for him to be on; that is the right side going west."

The plaintiff, Edna Shafer, also signed an affidavit on May 16, 1934, in which she said in part: " At the time of the accident my father was driving not over 25 miles per hour, and I am sure our car was on its right side of road. I had noticed that my father had been driving right along on his right side of the road. * * * A large van passed us, going in the opposite direction. Directly behind it, and very closely to it, the car of Smith cut over towards the center of the road onto our side of the center line only an instant after the van had gone by. * * * I think the lights on the van were dimmed, the lights on the other two cars were not exceptionally bright or dangerously bright. The lights on front of our car were burning at time of the accident. * * * I was sitting on the right side of the seat, and I was watching the road, and I could see that father was on his right side of the road at

time of accident, altho I will not state in feet or inches his exact position on the road."

In her testimony on the trial of her action against her father she testified: " It seemed to me that my father's car went to the left-hand side of the road toward the center, and I didn't have a chance to holler out. I did hear my mother scream, ' Daddy, get over. Get over,' and just as quick as she yelled, he seemed to hit the left-hand side of a car that was approaching us or coming toward us. * * * Q. And when the collision took place between your car and Smith's car, where was your car in the highway with reference to the center line of that highway? * * * A. It was on the left-hand side of the center, * * * turned in to the left. Q. And did you see Smith's car, the headlights of the Smith car, approaching you? A. I saw the headlights of the car just about the same time it was ready — we went to go right into it. There wasn't very much time in between there."

In the trial of the instant case Mrs. Shafer claimed that she was ill and incapacitated at the time she signed the affidavit. The plaintiff, however, stated that she was in full possession of all her faculties. Both ladies claimed that the investigator Lewis, who took the affidavits for the insurance company, told them that if they did not sign the affidavits the father would lose his driving license. Lewis denied that he ever made any such suggestion to the plaintiff or her mother. It is hardly worth while discussing this matter. Assuming that the ladies signed the affidavits under this urge, it does not help their case. For it would seem that if they could be so easily induced to aid in saving the driver's license of the husband and father by executing a false affidavit it would not be difficult for them to testify carelessly on the trial of an action in court wherein one of them was seeking to obtain a money judgment against an insurance company. These affiants squarely admitted on the instant trial that the statements in their affidavits made for defendant were false, and so their counsel averred. It is difficult to determine on which occasion these affiant-witnesses were pleased to tell the truth. The quoted extracts from the record can hardly be held sufficient to authorize our finding a planning and carrying out of a conspiracy to mulct the defendant. But they do point to a general elasticity of recollection on the part of this father, mother and daughter which is notable. They present a picture which readily permits, if it does not compel, an inference of unusually intrepid family interest in the financial welfare of this plaintiff.

It becomes necessary to dispose of two questions of law raised in the briefs:

1. Was the testimony of Smith, Harris and Rakestraw admissible on the trial of this action?

2. Was Shafer's communication to his counsel prior to the trial of the negligence action privileged?

I. The testimony of Smith, Harris and Rakestraw.

On the trial of the negligence action Smith, Harris and Rakestraw had given testimony on behalf of the plaintiff to the effect that Shafer was on the wrong side of the road. This testimony was read to the jury on the trial of this action over the objection of the defendant, nothing being shown to indicate that the presence of these men at the trial was not legally obtainable, and was received by the trial court on the theory that it might logically have brought to Shafer's mind some feeling of " less assurance " in regard to his position in the road, that it possibly bore upon what might have led up to the change in Shafer's statements.

Shafer in his report, affidavit and testimony, stated his position and Smith's position with reference to the center line of the highway The statements were based upon the evidence of his own senses and were, therefore, statements, not of opinion, but of fact. It is conceivable that he might have " less assurance " on the trial as to matters relating to opinion, but hardly as to matters of fact. Of course it was competent for Shafer to explain any variation between his affidavit and his testimony. He could explain, if he chose to do so, that he had a feeling of less assurance after listening to the testimony of Smith, Harris and Rakestraw that he was on the wrong side of the road. If he had taken this position the defendant might have inquired why this feeling of less assurance did not manifest itself in some way at the time he swore to the affidavit, inasmuch as he was fully informed at that time of the claim of Smith, Harris and Rakestraw that he was on the wrong side of the road. Instead of explaining, however, Shafer took the position on the witness stand that he had been consistent throughout and hence had nothing to explain. He insisted that there was no substantial variation between his report and affidavit on the one hand and his testimony on the other. Plaintiff's attorney says the same thing in his brief and even goes so far as to say that a lawyer must have " brass " to claim that there was any change in the account of circumstances of the accident by Shafer at any time. If there was no change, there was no need for explanation as to why the change was made, and there was no possible danger that the jury would be misled. That the sole purpose of offering the testimony was to explain any change in Shafer's account of the accident is conceded. It would seem to follow that there was no valid reason at all for introducing into evidence the otherwise incompetent, hearsay testimony of Smith, Harris and Rakestraw.

It was extremely prejudicial to the defendant to spread before this jury the strong proof of Shafer's negligence found in the testi-

mony of Smith, Harris and Rakestraw, when the only issues the jury was called upon to decide were (1) whether Shafer told the truth in the report and affidavit and if so, (2) whether he continued to tell the truth in his testimony, and (3) whether he co-operated with defendant as his contract required.

II. Was the communication between Shafer and his counsel privileged?

Counsel have briefed this question at great length. Section 353 of the Civil Practice Act (Code Civ. Proc. § 835), as it reads, extends no privilege to the client as to his own testimony. Wigmore on Evidence (2d ed. § 2324) and other text writers state, in substance, that " protection of the client in his subjective freedom of consultation would be defeated if confidential disclosures, not compellable from the attorney, were obtainable from the client." There is another principle, however, that privilege cannot be resorted to by a party witness to shield himself from a disclosure which is a legitimate subject of inquiry. (*Chellis* v. *Chapman*, 7 N. Y. Supp. 78; affd., 125 N. Y. 214.) Shafer was called as a witness by defendant in part to prove that it had good reason for disclaiming because Shafer had deceived it. The counsel with whom Shafer talked was counsel not only for him — under his insurance contract — but for the defendant. That defendant had good reason for disclaiming was a " legitimate subject of inquiry." It would have been difficult to make the proof otherwise. If the testimony sought to be elicited would have indicated that Shafer upon the trial to come was about to turn traitor to defendant and lend assistance to his daughter it might have had an important bearing upon defendant's course of action. The statement many times made judicially that such a statute is intended to be a shield but not a sword is applicable. The testimony should have been received.

The conclusions we reach as to the two evidence questions just discussed and as to the inferences to be drawn from the testimony of Harvey G. Shafer and his wife and daughter impel us to hold that erroneous rulings of materiality were made by the court and that the jury verdict was based upon unsatisfactory evidence.

Therefore, for the reasons given, the judgment and order appealed from should be reversed upon the law and facts and a new trial ordered, with costs to appellant to abide the event.

All concur, THOMPSON, J., solely on the errors in the admission and rejection of evidence. Present — SEARS, P. J., TAYLOR, THOMPSON, CROSBY and LEWIS, JJ.

Judgment and order reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event.