**Donald McGETTRICK, Plaintiff-Appellee,**

v.

**FIDELITY & CASUALTY COMPANY OF NEW YORK, Defendant-Appellant.**

**No. 154, Docket 25237.**

United States Court of Appeals
Second Circuit.

Argued Feb. 6, 1959.

Decided March 12, 1959.

884

Frederic W. Allen, of Edmunds, Austin & Wick, Burlington, Vt., for defendant-appellant.

James J. McNamara, of McNamara & Larrow, Burlington, Vt., for plaintiff-appellee.

Before CLARK, Chief Judge, MADDEN, Judge, United States Court of Claims,* and HINCKS, Circuit Judge.

MADDEN, Judge.

The plaintiff brought this action in the United States District Court for the District of Vermont seeking to have the defendant declared legally obligated[1] to defend the plaintiff in a suit brought by one Arthur North against the plaintiff, and further seeking damages from the defendant because of its failure to defend the plaintiff in that suit. Upon the verdict of a jury, the District Court rendered a judgment for the plaintiff in the amount of $4,500. The defendant has appealed.

The defendant, on August 25, 1955 issued an "Owner's, Landlord's and Tenant's Public Liability Policy" to Ira E. Yandow and Donald McGettrick, doing business as the Essex Restaurant. The policy, among other things, protected Yandow and McGettrick against liability to other persons for injuries occurring in their restaurant. It contained, among numerous other provisions, the following ones pertinent to this litigation.

"1. Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the premises for the purposes stated in the declarations, or operations necessary or incidental thereto.

"II. Defense, Settlement, Supplementary Payments. As respects the insurance afforded by other terms of this policy the company shall

"(a) defend any suit against the insured alleging such injury, sickness, disease, death, or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

"(b) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish any such bonds."

It also contained the following definition.

"2. Assault and Battery. Assault and battery shall be demed an accident unless committed by or at the direction of the insured."

On January 16, 1956, while the policy was in effect, there was a fracas in the Essex Restaurant. As a consequence of that incident, one Arthur North employed a lawyer and directed him to bring a civil suit against McGettrick for assault and battery. North's lawyer wrote to

---

* Sitting by designation pursuant to the provisions of 28 U.S.C. § 291(a).

[1]. See 28 U.S.C. §§ 2201, 2202, authorizing the granting of declaratory judgments.

McGettrick, advising him of North's claim. McGettrick turned the letter over to his insurance agent, who gave it to an adjuster for the defendant insurance company. The adjuster obtained written statements from McGettrick and Yandow. He learned from North's lawyer that North was claiming that McGettrick had committed an assault and battery upon him. The adjuster thereupon advised McGettrick that the insurance company would not defend the threatened suit by North because the policy did not cover the situation. This statement was repeated to Mr. MacCausland, a lawyer whom McGettrick had employed.

North brought his suit for assault and battery alleging damages of $5,000 and McGettrick was obliged to furnish a bail bond to avoid being held on a "body writ." He would not have been obliged to furnish the bond if the insurance company had undertaken to defend the suit.

McGettrick's attorney, in preparing to defend North's suit, obtained statements from twelve or more witnesses of the restaurant incident tending to show that McGettrick's battery of North was committed in self-defense. He discussed these statements with the insurance company's adjuster, but did not show them to him, though requested to do so. He persuaded North's attorney to agree to accept $1,000 instead of the $5,000 named in the suit. He advised the insurance adjuster of this fact, and the insurance adjuster finally settled the North claim for $400, in order to reduce the expense of defending a possible action against the insurance company.

McGettrick thereupon brought the instant suit against the defendant insurance company. The District Judge instructed the jury that, when the claim of North was brought to the attention of the insurance company, it was under a duty to make a reasonably careful investigation to determine whether McGettrick, in the fracas in the restaurant, was guilty of an assault and battery, or acted in self-defense and had therefore not committed an assault and battery; that if the insurance company did not make such an investigation it failed to act in good faith when it disclaimed coverage; that if the insurance company failed to make the required investigation, and if the jury found that McGettrick did act in self-defense, then the incident was covered by the insurance policy and the company was legally obligated to defend McGettrick against the North claim, and to compensate him in damages for its failure to do so.

The insurance company, the appellant, asserts that since North's suit was for an assault and battery by McGettrick and since the definition in the policy, hereinabove quoted, said that an assault and battery committed by the insured was not covered by the policy, that ended the matter and left the company free of responsibility. It says, in effect, that the statement in the claim made, or in the suit filed, by the third person claiming to have suffered injury for which the insured is responsible, determines whether the claim is covered by the policy or not.

The language of the policy itself does not support the appellant's contention. It says that assault and battery shall be deemed an accident (and therefore covered by the policy) unless committed by or at the direction of the insured. It would be impossible to make a stronger inferential statement that an incident alleged to be an assault and battery committed by the insured, but which was not an assault and battery at all, because what was done was done in self-defense, is within the definition of an accident and is therefore covered by the policy. The language of the policy says nothing about statement of claims, or allegations in pleadings filed in lawsuits. It would seem, therefore, that it must have reference to objective facts.

Liability policies commonly contain a promise to defend any suit against the insured alleging injury covered by the policy even if the suit is groundless, false or fraudulent. When insurance companies have sought to disclaim responsibility for the defense of such suits by showing that in fact the injury result-

ed from a cause excluded from coverage by the policy, the courts have held them to their express bargain to defend such suits. See 50 A.L.R.2d 458 for an extensive note on the entire subject of an insurer's duty to defend actions against the insured. Beginning at page 463 is a discussion, with numerous citations, of the duty to defend groundless suits if the allegations in the suits are such as to place them within the coverage of the policies.

In holding that there is such a duty to defend, the courts have frequently used language to the effect that whether the claim is covered by the policy or not is to be determined by the allegations of the claim or the suit. In a number of cases the courts have actually held that if the allegations of the third party's complaint state a claim not covered by the policy, the insurance company is under no duty to investigate or defend. See, e. g., Wilson v. Maryland Casualty Co., 377 Pa. 588, 105 A.2d 304, 50 A.L.R.2d 449. Cf. Lee v. Aetna Casualty and Surety Co., D.C.N.Y., 81 F.Supp. 1008, affirmed 2 Cir., 178 F.2d 750. There are cases perhaps less numerous, holding to the contrary. Hardware Mutual Casualty Co. v. Hilderbrandt, 10 Cir., 119 F.2d 291; Marshall's U. S. Auto Supply, Inc. v. Maryland Casualty Co., 354 Mo. 455, 189 S.W.2d 529.

The conclusion that because the insurance company is bound to defend a suit alleging a claim covered by its policy, when in fact the incident giving rise to the claim was outside the scope of, or was expressly excluded from coverage, therefore the company is excused from defending a suit alleging facts not covered by the policy, is a *non sequitur*. In the former case, the express agreement to defend is controlling. In the latter case, there is no express agreement as to the duty to defend, and the rights of the parties must be determined by fairly construing the insurance contract in such a way as to carry out its intended purpose.

■ The instant case of the small tavern poses the problem well. When the partners buy their liability insurance, they may well suppose that they are, for the premiums paid, getting protection from the expenses which tavern incidents may entail. If they read their policy, they see that assaults are "accidents," and therefore covered by the policy, unless they themselves commit them. They conclude that if they refrain from unlawful conduct in this regard, they are covered by their insurance. But a customer is disorderly and they properly eject him. Or he assaults another customer who is within the protection of their tavern, and they forcibly restrain him. He sues them for assault and battery. According to the appellant's contention, they have no insurance for this situation. We think the District Court was right in imposing upon the insurance company the duty to reasonably investigate the situation, and in holding that its failure to do so was a breach of its duty under its contract. The jury found that it had not made the required investigation, and that, in fact, McGettrick had not committed an assault and battery upon North. Since the insurance company had not made the required investigation, the only possible substitute for what its investigation would have shown is the jury's own finding as to the merits of North's claim.

The legal question involved is a question of the law of the State of Vermont. The only pertinent Vermont authority is the 1942 decision of the United States District Court in that State in American Fidelity Co. v. Deerfield Valley Grain Co., 43 F.Supp. 841, 845. In that case the insurance policy expressly excluded from coverage injuries to employees of the insured. In his suit against the insured, the injured person alleged that he was an employee of the insured. He was, in fact, such an employee, and nobody contended that he was not. Both the allegations of his complaint, and the objective facts, then, excluded the incident from the coverage of the policy.

In the Deerfield case the Judge cited, with apparent approval, a number of cases in which various courts had held, or

said, that the duty of the insurer to defend should be determined from the allegations in the petition or complaint in the action brought by the one injured or damaged against the insured. Our statement of the facts of the Deerfield case shows that the adoption of such a doctrine was not necessary to the decision in that case. The District Judge said, later in the Deerfield opinion, that the insurance company there involved was under no obligation to defend the suit against its insured "since it would not be liable under its contract for any recovery therein had."

If the language just quoted is an accurate statement of the scope of an insurance company's duty to defend, there would be no duty in our instant case. If North's suit against McGettrick had gone to trial, and if North had won it, it would have meant that the jury or the court had decided that McGettrick's plea of self-defense or other justification of his battery of North had not been proved; that McGettrick had been guilty of assault and battery; and that therefore the incident was excluded from the coverage of the policy and the insurance company would not have to pay the judgment for McGettrick.

To make the obligation of the insurance company to pay the judgment the sole test of its liability to defend the action against the insured seems to us to overlook one of the purposes for which such insurance is bought and paid for. Incidents such as the one here involved frequently give rise to close and difficult questions of fact as to who started the controversy, whether the threat of force by the patron was sufficiently imminent to justify forcible defense or restraint, whether more force was used by the insured than was necessary. If the insurance is to be of any use at all as to such incidents, it should entitle the insured to a defense against such suits if a defense can be made in good faith and with reasonable hope of success.

In the note in 50 A.L.R.2d 458, referred to above, there is a section beginning at page 475, with the heading "Insurer's ultimate liability not a criterion." Numerous cases are cited in support of the rule stated in the heading.

As we have indicated, there is no decision by the State Courts of Vermont on the instant question. There is language in the Deerfield case, not necessary to the decision, which would prevent recovery in the instant case. In that situation, we think that Judge Gibson's conclusion that it would be suitable law for Vermont if the insurance company were required to investigate the facts and not rely entirely on the allegations of the claim or of the pleadings in North's suit, was a justifiable conclusion. See Cooper v. American Airlines, 2 Cir., 149 F.2d 355, 162 A.L.R. 318; Kimble v. Willey, 8 Cir., 204 F.2d 238, 38 A.L.R.2d 814; People of State of California v. United States, 9 Cir., 235 F.2d 647.

■ The defendant-appellant asserts that the District Court's instruction to the jury as to the matters which could be included as elements of the plaintiff's recoverable damages was erroneous. The Court instructed the jury that it might include the $750 fee of McGettrick's lawyer who carried on the negotiations with North with a view to a settlement, also the $400 fee of Mr. McNamara, McGettrick's lawyer in the trial of the instant suit against the defendant, and also the amount of the damage, if any, which McGettrick suffered in his business interests as a result of the defendant's failure to perform its duty under its contract of insurance.

As we have said, the jury's verdict was for $4500. It must, therefore, have found damages to McGettrick's business interests in the amount of $3350 in addition to the two lawyers' fees of $750 and $400 referred to above. The plaintiff does not cite to us any authority for the recovery of the counsel fees in the instant suit. We think it was improper to allow the jury to include them in the verdict.

As to the damages to the plaintiff's interest, the defendant-appellant says that there was no evidence of any such damage resulting from the conduct of the de-

fendant. The plaintiff does not point to any such evidence. That item of $3350 should not have been included in the verdict.

The case is remanded with a direction to enter judgment for $750 in the event that the plaintiff shall file a remittitur of so much of the judgment as exceeds that amount; otherwise to set aside the verdict and grant a new trial. The costs on appeal to be taxed against neither party.