Herman T. STICHMAN, Trustee, Hudson & Manhattan Railroad Company and Hudson & Manhattan Corporation, Plaintiffs,

v.

MICHIGAN MUTUAL LIABILITY COMPANY, Defendant.

Civ. A. No. 153-192.

United States District Court
S. D. New York.

May 17, 1963.

L. Robert Driver, Jr., New York City, for plaintiffs; John F. McNeill, New York City, of counsel.

Monica & Feury, New York City, for defendant; Thomas H. Healey, New York City, of counsel.

McLEAN, District Judge.

This is an action by an insured against an insurer seeking a judgment declaring that defendant insurer is obligated by its policy to defend an action brought against plaintiff insured by one of its employees, John T. Hayes. Defendant counterclaimed for a declaration to the contrary. While the action was pending, plaintiff settled with Hayes. Plaintiff then amended and supplemented his complaint to seek recovery of the amount which he paid Hayes in settlement, plus the cost of defending the Hayes action.

Plaintiff is the trustee of Hudson & Manhattan Railroad Company, Debtor in reorganization proceedings under Chapter X of the Bankruptcy Act. Pursuant to the plan of reorganization, his rights have been assigned to Hudson & Manhattan Corporation, which is also named as a plaintiff in the supplemental complaint. Nothing in this case turns on the intricacies of the reorganization proceeding, and for simplicity, I will refer to plaintiff throughout as "the Railroad Company."

 A question of jurisdiction arises at the outset. Jurisdiction here is based on diversity of citizenship. The question is as to the jurisdictional amount. The Hayes action sought a judgment against the Railroad Company for $37,482.19. That fact satisfied the jurisdictional re-

quirement in this action for a declaratory judgment. 6 Moore Federal Practice ¶ 57.23 (2d ed. 1953).

 The Hayes action was settled by the Railroad Company for $1,835.10, and the amount now claimed by it in this action is only that sum plus attorneys' fees and expenses aggregating in all $3,-000. Although the amount now involved is less than the $10,000 required by 28 U.S.C. § 1332, it has been held in analogous situations that jurisdiction, having once existed, continues despite the reduction in amount. Ford, Bacon & Davis, Inc. v. Volentine, 64 F.2d 800 (5th Cir., 1933); Mutual Life Ins. Co. of New York v. Rose, 294 F. 122 (E.D.Ky.1923), reversed on other grounds, 19 F.2d 280 (6th Cir., 1927).

In accordance with that rule, I hold that this court has jurisdiction of this controversy in its present form.

There is no real dispute as to the facts, many of which were stipulated. Defendant offered no evidence, but rested on its motion to dismiss at the end of plaintiff's case. I find the facts to be as follows:

The policy is a workmen's compensation and employer's liability policy. It was issued by defendant to the Railroad Company in New York. It covered the period from March 27, 1956 to March 27, 1957.

In "Coverage A" defendant undertook "to pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law." In "Coverage B" defendant agreed to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident * * * sustained * * * by any employee of the insured arising out of and in the course of his employment by the insured * *."

Defendant further agreed to "defend any proceeding against the insured seeking such benefits and any suit against the insured alleging such injury and seeking damages on account thereof, even if such proceeding or suit is groundless, false or fraudulent * * *."

The policy applied only to operations conducted at or from any "workplace" described in Item 1 or 4 of the declarations. Item 1 of the declarations defined the "workplaces" as including "20–52 Church St., Known as Hudson Terminal Bldgs." Item 4 listed as covered by the policy "Building operation—Commercial," and also listed "Buildings N.O.C.* operation by owner or lessee—including care, custody and maintenance of premises, the operation of elevators or heating, lighting or power apparatus."

Item 6 of the declarations states, "This policy does not cover any railroad operations." For some unexplained reason this was "amended" by an "amending endorsement" to read: "This policy does not cover any Railroad Operations the insured being an authorized self insurer." This is the clause which gives rise to the present controversy.

During 1957–58, the Railroad Company was engaged in two different businesses. It operated a railroad, i. e., the "Tube" from Hudson Terminal to New Jersey. It also operated office buildings, one of which was 50 Church Street. That building was rented entirely to tenants. The Railroad Company itself occupied no space in it. The buildings were operated by a separate division, not a subsidiary, of the Railroad Company called the Buildings Division.

The railroad terminal is underneath 50 Church Street. The 15 elevators which serve the 50 Church Street building, however, do not extend down to any of the levels, variously known as the "concourse level," the "passenger loading level," and the "track level" of the subterranean terminal. All but one of the 15 elevators may be entered only from the main lobby of the building which is on the street level of Church and Fulton Streets. One elevator may be entered from a separate alley which is also on the street level. These 15 elevators exist solely to serve the tenants of the building, as in any other office building.

Hayes was an employee of the Railroad Company in its Buildings Division. He was an elevator mechanic. For some 12 years prior to February 4, 1957, he had worked on the elevators in 50 Church Street, cleaning and repairing them. These were his only duties.

On February 4, 1957 he was in the penthouse on the roof of that building cleaning the hoist machinery of one of the elevators. He caught his right hand in the machinery and injured his middle finger to such an extent that it was necessary to amputate its tip. Claim was made under Coverage A of defendant's policy for workmen's compensation. Defendant recognized the claim and paid compensation to Hayes and paid his medical bills.

On September 17, 1957 Hayes began an action in this court against the Railroad Company to recover damages for his injury in the sum of $37,482.19. His complaint alleged that his action arose under the Federal Employers' Liability Act (45 U.S.C. § 51 et seq.) and under the Safety Appliance Acts (45 U.S.C. § 1–23). He alleged that the Railroad Company was a common carrier and that he and the Railroad Company were engaged in interstate commerce. He further alleged that on February 4, 1957 he was employed by the Railroad Company at 50 Church Street as a temporary elevator mechanic and that on that date and at that place he was injured "as a result of the negligence of the defendant * * * in failing to provide a safe place to work, sufficient manpower, and * * * in other ways * * *."

The Railroad Company called upon defendant to defend the action under its policy. Without committing itself to such a course, defendant caused its attorney to enter a special appearance in the Hayes action and to move for a more definite statement. Hayes supplied such a statement and incorporated the substance of it in an amended complaint in which, in addition to realleging the al-

---

* The policy does not state and the parties never explained what "N.O.C." stands for, but neither side attributes any significance to these initials.

legations of his first complaint, he added an allegation stating that he was injured while cleaning the elevator and that he was engaged in interstate commerce, "in that the defendant, his employer, is a railroad corporation doing business in and between the States of New York and New Jersey; in that the said railroad also controls and maintains the building in which the plaintiff was employed, 50 Church Street, New York City, and provides access from its railroad station at Hudson Terminal, New York City, directly to 50 Church Street, New York City; in that the main offices of said defendant engaged in such interstate commerce are also located at 50 Church Street, New York City; and in that a major portion of the tenants of said 50 Church Street, other than the defendant, are similarly engaged in interstate commerce."

As we have seen, the evidence in this action demonstrates that some of Hayes' allegations were untrue, i. e., the allegation that there is access from the railroad station at Hudson Terminal directly to 50 Church Street and that the main offices of the Railroad Company are located at 50 Church Street.

When the amended complaint was served, defendant declined to defend the action. It took the position that it was not obligated under its policy to do so because it appeared from Hayes' amended complaint that he claimed to be engaged in "railroad operations" which were specifically excluded from the coverage of the policy. The Railroad Company perforce defended the action by its own attorneys. It moved for summary judgment dismissing the Hayes complaint. Judge Bryan held that the question presented was whether any part of Hayes' duties were in "furtherance of interstate * * * commerce," or "in any way directly or closely and substantially affect[ed] such commerce" within the meaning of the Federal Employers' Liability Act. He held that these questions were questions of fact and accordingly he denied the motion. The Railroad Company subsequently settled the

action for $1,835.10. It incurred counsel fees and various expenses in defending it.

■ Since the policy was issued in New York and covered operations of the insured in New York, the law of New York governs its construction.

It is apparent that the parties intended to distinguish between the Railroad Company's building operations and its railroad operations. The policy covered the former, not the latter. To be engaged in railroad operations, an employee's activities must relate directly to the transportation of freight or passengers by rail.

■ The evidence clearly establishes, and I so find, that Hayes was engaged in building operations, not in railroad operations. His duties and activities were concerned solely with cleaning and repairing elevators in an office building. Nothing that he did pertained to the railroad in any way. It was purely a fortuitous circumstance that his employer, in addition to operating the building, also ran a railroad. There was no connection between the two.

Coverage A of the policy, the workmen's compensation insurance, thus applied to Hayes. Defendant recognized this by paying compensation in his case. Similarly, Coverage B, the employer's liability, applied. Hayes' injury arose in fact out of an accident in the course of his employment in operations covered by the policy. Defendant agreed to defend "any suit against the insured alleging such injury and seeking damages on account thereof." The question is whether Hayes' action against the Railroad Company was such a suit.

■■ It is settled law in New York that if the complaint in the third person's action against the insured alleges a cause of action which falls within the coverage of the policy, the insurance company is obligated to defend the action. If it refuses to do so and the insured is forced to defend the action himself, the insurance company is liable to the insured for his attorneys' fees and expenses of defense. Goldberg v. Lumber Mutual Cas-

ualty Insurance Co., 297 N.Y. 148, 77 N.E. 2d 131 (1948).

This is true whether in fact the cause of action was within the coverage of the policy or not, for there is a distinction between the insurer's obligation to defend and its obligation to pay any damages that the third person may recover. The insurer may be bound to defend even though it is not ultimately bound to pay. The insurer has agreed to defend any action which alleges a certain type of claim, even though the action is "groundless, false or fraudulent." Hence it must do so, at its expense, even though it eventually turns out that the third party in fact has no claim of that type. And it must defend such an action even though at the outset of the case the insurer has reason to believe that the final result will be that the claim is not covered. Goldberg v. Lumber Mutual Casualty Insurance Co., supra.

Moreover, it is not only when the third party's complaint specifically alleges a claim covered by the policy that the insurer is obligated to defend. Even in the absence of such a specific allegation, if the complaint does not "exclude a basis for recovery for which the insurer would be liable," the insurer must defend the suit until it can "confine the claim" to a recovery that the policy does not cover. It was so held in Maryland Casualty Co. v. Pearson, 194 F.2d 284 (2d Cir., 1952), a case in which the clause obligating the insurer to defend was worded identically with that in the policy with which we are here concerned.

The same result was reached in Pow-Well Plumbing & Heating, Inc. v. Merchants Mutual Casualty Co., 195 Misc. 251, 89 N.Y.S.2d 469 (City Ct.1949), where the policy clause was also identical with this one.

There is a third possible situation. The third party's complaint against the insured may specifically allege a claim which is not covered by the policy, but the fact may be that the claim is covered and the insurer may have reason to know that to be the fact. In these circumstances, if the allegations of the complaint are to govern, as they do in the situations previously discussed, it would follow that the insurer is not obligated to defend the action. But there is authority in this Circuit to the contrary. In McGettrick v. Fidelity & Casualty Co. of New York, 264 F.2d 883 (2d Cir., 1959), the policy excluded claims against the insured arising from assaults committed by the insured himself. An action alleging such an assault was commenced by a third person against the insured. The court held that the insurance company was obligated to investigate and defend the action. The court said (264 F.2d 883 at 886):

> "The conclusion that because the insurance company is bound to defend a suit alleging a claim covered by its policy, when in fact the incident giving rise to the claim was outside the scope of, or was expressly excluded from coverage, therefore the company is excused from defending a suit alleging facts not covered by the policy, is a *non sequitur*."

The court so held, despite the fact that the policy, as in the present case, referred to the defense of actions which "alleged" a claim covered by the policy. This amounts to a holding that no such "allegation" is necessary.

In the McGettrick case, Vermont law applied, but since no Vermont case in point could be found, the court in effect decided for itself what the Vermont law ought to be.

No very square decision on this point has been discovered in New York, although a dictum in Mason-Henry Press v. Aetna Life Insurance Company, 211 N.Y. 489, 105 N.E. 826 (1914) is of interest. There the policy indemnified the insured against claims arising out of injuries to employees, but excluded injuries to "any person employed in violation of law." An employee sued the insured charging various acts of negligence and alleging among other things that he was under sixteen years of age and hence employed in violation of law. The insurance company did undertake the defense

of the action which resulted in a judgment in favor of the employee in which the jury found expressly that he was under sixteen. The insured sued the insurance company for the amount of the judgment, despite the fact that obviously the claim had turned out to be outside the coverage of the policy. The plaintiff's contention was that the insurance company had waived this defense. The court held that it had not and affirmed a judgment for the defendant. In the course of its discussion, the court said (211 N.Y. 489 at 496, 105 N.E. 826 at 828):

"As has been stated, various grounds of negligence were alleged which were covered by the policy, and the insured insisted from the outset that it had not violated the law in hiring the boy, and that therefore this allegation of fault was untrue. Under such circumstances, I think that the insurer, as a matter of safety to itself and of fairness to the insured, was bound to undertake the defense of the action for the benefit of both and of each."

How do these principles apply here? Hayes' amended complaint did not say in so many words that he was engaged "in building operations." Neither did it say expressly that he was engaged in "railroad operations." It therefore becomes necessary to construe the complaint to determine its meaning.

The complaint does set forth the fact that Hayes' duties consisted "of making repairs, cleaning, installing new parts, and other related work in connection with elevators" at 50 Church Street, that his injury occurred while he was cleaning an elevator there, and that 50 Church Street was "the building in which the plaintiff was employed." His complaint based his claim on the Federal Employers' Liability Act and the Safety Appliance Acts. In an effort to bring himself within those statutes, he alleged that his employer, as a common carrier, was engaged in interstate commerce, and that he, Hayes, was also engaged in such commerce because his employer also maintained 50 Church Street, where he was employed, and had its main offices there.

Taking this complaint at its face value, does it amount to an allegation that plaintiff was engaged in railroad operations? Defendant contends that it does, because of the fact that Hayes claimed to be covered by the Federal Employers' Liability Act.

That Act (45 U.S.C. § 51) provides that any employee of a carrier shall be considered to be employed in interstate commerce and to be entitled to the benefits of the Act if "any part" of his duties is "the furtherance of" interstate commerce or "in any way directly or closely and substantially affect[s]" such commerce. The Safety Appliance Acts (45 U.S.C. § 1–23) do not alter this statutory test.

Consequently, Hayes claimed, in effect, that his activities in cleaning and repairing the elevators in 50 Church Street "furthered" or "affected" the railroad operations of the Railroad Company. Is this equivalent to an allegation that Hayes was engaged in railroad operations? I do not think that it is. An employee's activities can "further" or "affect" transportation, even though he does no transporting. That was the rationale in Reed v. Pennsylvania R. R., 351 U.S. 502, 76 S.Ct. 958, 100 L.Ed. 1366 (1956), which held that a file clerk employed by a railroad was engaged in activities which sufficiently affected the railroad's operations to entitle her to the benefits of the Act. The scope of the Act is to be construed broadly, but the exclusionary clause in the policy, which was prepared by the insurer, is to be construed narrowly. Taylor v. United States Casualty Co., 269 N.Y. 360, 199 N.E. 620, 115 A.L.R. 822 (1936).

■ I conclude, therefore, that defendant was not justified in asserting that the Hayes complaint alleged, in effect, that Hayes was engaged in railroad operations.

Moreover, even if it be assumed that the complaint could be so construed, the complaint did not exclude another basis

for recovery which came within the coverage of the policy. It alleged what Hayes' duties were, and under that complaint Hayes could have introduced proof of those duties. It could well have been decided in that case that Hayes was purely and simply a building employee, i. e., the type of employee covered by defendant's policy. It may well be that in that event Hayes' action would have been dismissed because of his failure to prove that the Federal Employers' Liability Act applied, and hence the Railroad Company would not have suffered a judgment which the insurer would have been called upon to pay. But we are not concerned here with how the action would have eventually turned out. The point is that enough was alleged in the complaint to require the insurer to defend it. That is the protection for which the insured paid premiums. If the defense was successful, so much the better for both insured and insurer, but whether it would be successful or not is not the basis of the insurer's obligation to defend.

Finally, even if it be assumed that the complaint, properly construed, amounted to nothing more than an allegation that Hayes was engaged solely in railroad operations, the fact clearly is that he was not so engaged, and defendant was apprised of that fact. Under such circumstances this may well be a case in which the insurer "as a matter of safety to itself and of fairness to the insured" should have undertaken the defense, as suggested in Mason-Henry Press v. Aetna Life Insurance Company, supra. In view of the construction of the Hayes complaint which I have adopted, it is not necessary to go that far in this case, but if it were necessary to do so, McGettrick v. Fidelity & Casualty Co. of New York, supra, would seem to require that result.

I hold, therefore, that defendant was obligated to defend the Hayes action. It follows that it is liable for the expenses which plaintiff reasonably incurred in defending it. The amount claimed for those expenses is $1,164.90, i. e., the difference between plaintiff's total claim of $3,000 and the amount of $1,835.10 paid to Hayes in settlement. This charge is for the time devoted to the defense of the Hayes action by a claim agent and three attorneys in plaintiff's employ. I find that this amount is reasonable.

Whether the Railroad Company is also entitled to recover the $1,835.10 which it paid to Hayes in settlement involves different considerations. The rule is stated in 7A Appleman, Insurance Law and Practice, § 4690 (1962) as follows:

"If an insurer unjustifiably refuses to defend a suit, the insured may make a reasonable settlement or compromise of the injured person's claim, and is then entitled to reimbursement from the insurer, even though the policy purports to avoid liability for settlements made without the insurer's consent."

In view of the fact that Hayes claimed over $37,000 in his complaint and that his injury was severe enough to involve the amputation of the tip of his finger, it seems likely that a jury would have awarded him substantially more than $1,835.10. In that sense, a settlement for that amount was reasonable.

But would Hayes' case ever have been submitted to a jury or would the court have directed a verdict for the Railroad Company on the ground that there was no evidence from which a jury could properly find that Hayes' duties furthered or affected interstate commerce? If the evidence on a trial of the Hayes action were the same as it is here, it is hard to see how the issue could have been left to the jury. But from the point of view of the Railroad Company, at the time that it was considering settlement, this was purely a matter of speculation. All it had to go on was the knowledge that the scope of the Federal Employers' Liability Act was very broad, as witness the decision in Reed v. Pennsylvania R. R., supra, and the further fact that Judge Bryan in the Hayes case itself had declined to hold as a matter of law that the Act did not apply. Under these

circumstances, therefore, I believe that the Railroad Company acted reasonably in disposing of the case for a modest sum.

The insurer, having failed to defend as it should have done, is not in a strong position to criticize the judgment of the insured in this respect. It may be noted that in McGettrick v. Fidelity & Casualty Co. of New York, supra, although the insurer refused to defend, it participated in the settlement negotiations and paid the amount of the settlement. The defendant here could have done the same. I conclude, therefore, that plaintiff is entitled to recover the $1,835.10.

Pursuant to Rule 52(a) this opinion constitutes the court's findings of fact and conclusions of law.

Plaintiff is entitled to a declaratory judgment as prayed for and to judgment against defendant in the sum of $3,000 plus interest. Submit judgment on notice.

So ordered.