**NATIONAL INDEMNITY COMPANY,
Appellant,**

v.

**George B. FLESHER and Estelle Flesher,
Appellees,**

v.

**Ronald W. STERNEMAN, Intervenor-
Appellee.**

**No. 1065.**

Supreme Court of Alaska.

May 22, 1970.

John M. Conway and Jesse Bell, Anchorage, for appellant.

John M. Savage, of Savage, Erwin, Curran & Johnson, Anchorage, for appellee & intervenor-appellee.

Jesse Bell and John M. Conway, Atkinson, Wade, Conway & Young, Anchorage, for appellant.

John M. Savage, Savage, Erwin, Curran & Johnson, Anchorage, for appellees and intervenor-appellee.

Before BONEY, C. J., DIMOND, RABINOWITZ and CONNOR, JJ., and FITZGERALD, Superior Court Judge.

RABINOWITZ, Justice.

This declaratory judgment action initiated by appellee George Flesher raises questions concerning the insurer, National's, duty to defend. The trial court held that National had a duty to defend Flesher, that National breached its duty to defend, and awarded damages against National. This appeal followed.

Insurer National issued to insured George Flesher an automobile liability insurance policy. This policy included a $10,000 limit on liability per person and standard covenant to defend and drive-other-cars provisions. Under the policy, the insurer agreed to pay "all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person." The policy required the insurer to "defend any suit against the insured alleging such injury * * * and seeking damages on account thereof, even if such suit is groundless,

false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim as it deems expedient." Specifically excluded from policy coverage was the use of "any automobile * * * in a business or occupation" of the insured.[1]

In June of 1962, intervenor Sterneman disabled a Broadway Cab Company taxicab near Soldotna. Appellee George Flesher, a Broadway Cab stockholder and employee, had Al's East Fifth Service, Inc. send a wrecker truck and driver, one Phillip Van Buren, from Anchorage to tow the cab back. Flesher, rather than Van Buren, was driving the wrecker, with the cab in tow, when he ran it off the highway, injuring intervenor Sterneman.

Sterneman subsequently brought a personal injury action against appellee Flesh-er, Al's East Fifth Service, Inc., Broadway Cab Company, and Van Buren. In his first amended complaint, Sterneman alleged that appellee Flesher was Al's "borrowed servant or employee" and also an "agent" of Broadway Cab "in the course and scope of his employment" with Broadway Cab when he negligently drove Al's wrecking truck off the road.[2] Flesher denied these allegations admitting only that Sterneman was injured in an accident in Al's truck at a time when it was occupied by Sterneman, Flesher, and Van Buren. Sterneman's second amended complaint alleged in part that Flesher drove Al's wrecking truck as Al's "borrowed servant and employee," and also as "agent and employee" of Broadway Cab "in the course and scope of his employment."[3] In his answer, appellee Flesher "specifically" denied that he was the

---

1. The use-of-other-automobile clause reads as follows:

> If the named insured is an individual or husband and wife and if during the policy period such named insured, or the spouse of such individual if a resident of the same household, owns a private passenger automobile covered by this policy, such insurance as is afforded by this policy under coverages A, B, division 1 of coverage C and coverage E with respect to said automobile applies with respect to any other automobile, subject to the following provisions:
>
> * * * * *
>
> (d) This insuring agreement does not apply:
> (1) to any automobile owned by or furnished for regular use to either the named insured or a member of the same household other than a private chauffeur or domestic servant of such named insured or spouse;
> (2) to any accident arising out of the operation of an automobile sales agency, repair shop, service station, storage garage or public parking place;
> (3) under coverages A, B, or division 1 of coverage C, to any automobile while used in a business or occupation of such named insured or spouse except a private passenger automobile operated or occupied by such named insured, spouse, private chauffeur or domestic servant;
> (4) under coverage E, to any loss when there is any other insurance

which would apply thereto in the absence of this insuring agreement, whether such other insurance covers the interest of the named insured or spouse, the owner of the automobile or any other person or organization.

Insuring agreement IV(b) defines private passenger automobile:

> Private Passenger Automobile. The term 'private passenger automobile' means a private passenger, station wagon or jeep type automobile, and also includes under coverages A, B and division 1 of coverage C any automobile the purposes of use of which are stated in the declarations as 'pleasure and business.'

2. Sterneman's amended complaint alleged in part:

> [T]hat on or about June 22, 1962 he was a business invitee, riding as a passenger in a truck owned by the defendant Al's East Fifth Service, Inc., and driven by its borrowed servant or employee, to-wit George Flesher, who was at the time also an agent of Broadway Cab Company in the course and scope of his employment for said Cab Company, and that said George Flesher negligently and carelessly went off the Seward Highway while driving said wrecking truck in the course and scope of his employment for the defendant Corporation * * *.

3. In his second amended complaint, Sterneman asserted in part:

> That on or about June 22, 1962, Plaintiff, a business invitee, was riding

"agent" of Broadway Cab and denied that he was the borrowed servant and employee of Al's.

After the inception of this litigation, Flesher's attorney wrote several letters to appellant National Indemnity requesting them to defend Flesher. National repeatedly refused these tenders of defense on the ground that its policy did not cover the accident.

Flesher then instituted a declaratory judgment action against National Indemnity, his automobile liability insurance carrier, because of its failure to defend him against the then pending personal injury action which had been commenced by Sterneman against Flesher, Al's East Fifth Service, Inc., Broadway Cab Company, and Van Buren.[4] National admitted it had refused to assume the defense of Flesher contending that it was not required to under its policy. More specifically, in an affirmative defense National asserted that its contract of insurance did "not apply to the facts alleged and thus far established" in the Sterneman personal injury action.

While the declaratory judgment action was still pending, Sterneman and Flesher settled the negligence action. Flesher stipulated to the entry of judgment for $23,575, plus attorney's fees. Sterneman also covenanted not to execute against Flesher, and Flesher assigned to Sterneman his rights against National Indemnity. Then, Sterneman intervened in Flesher's declaratory judgment action against National.[5] Flesher and Sterneman subsequently moved for partial summary judgment that the policy covered the accident, and National moved for a partial summary judgment that it did not. Both motions were denied on the ground that there was a genuine issue of material fact.[6]

Later Flesher and Sterneman moved for summary judgment asserting that the damages flowing from National's breach of its duty to defend Flesher in the negligence suit were fixed. The trial court granted partial summary judgment in favor of Flesher and Sterneman reserving for hearing the question of whether the stipulated $23,575 judgment was reasonable, and whether a settlement offer had been made to National prior to Flesher and Sterneman's stipulated judgment in the negligence action. After hearing, the court found the Flesher-Sterneman settlement reasonable, and took under advisement the question of whether National's liability should be for the $10,000 policy limit or the full amount of the settlement, ultimately deciding that National was responsible in full.

In this appeal, National argues that its duty to defend could arise only if Sterneman's complaint had alleged a cause of action within the scope of the policy. Appellees argue that National had a duty of "reasonable investigation" to determine whether

---

as a passenger in a wrecking truck owned by the Defendant, Al's East Fifth Service, Inc., and driven by its borrowed servant and employee, to-wit, George Flesher, who was at this time also acting as an agent and employee of Broadway Cab Company, Inc., in the course and scope of his employment.

4. In this action, Flesher sought a declaration that he was entitled to a defense from National Indemnity, reimbursement for costs and attorneys fees incurred in the Sterneman action, indemnification for any judgment obtained by Sterneman, and a ruling that National's coverage was primary.

5. Intervenor Sterneman asked the trial court to declare

[t]hat National * * * did in fact breach its contract of insurance with * * * Flesher * * * and as a direct and proximate result of said breach of contract * * * Flesher has suffered judgment to be taken against him.

Further, in this complaint in intervention, Sterneman prayed for judgment in the amount of $23,575 against National.

6. In the trial court's view, the genuine issue which precluded partial summary judgment centered on the question of whether or not at the time of the accident Flesher was using the wrecker "in his business or occupation as contemplated by" the business or occupation exclusion contained in National's policy.

an action might terminate in liability within the scope of the policy, and that National should have known from all the pleadings that the action would so terminate. National counters that even under appellees' "reasonable investigation" rule there remained a question of fact precluding summary judgment as to whether a reasonable investigation on National's part would have disclosed a claim within the scope of its policy.

The drive-other-cars clause extended the coverage afforded by National's policy to "any other automobile," with several exceptions, such as "any accident arising out of the operation of an automobile * * * repair shop, service station" and "any automobile while used in a business or occupation" of Flesher except a "private passenger automobile." National's policy defined "private passenger automobile as any automobile the purposes of use of which are stated in the declaration as 'pleasure and business.'" The only automobile, the purpose of which were stated in the declarations of the policy, was Flesher's Mercedes.[7] As previously noted, the duty-to-defend clause required National to defend any suit against Flesher "alleging" injury for which the policy afforded insurance "even if such suit is groundless, false or fraudulent."

In granting appellee Flesher and intervenor Sterneman's motion for summary judgment, the trial court held that there was at least a "colorable claim coming within the terms of the policy" obligating National to defend, miniminally at least, to the point establishing whether or not there was coverage.[8] In reaching these conclusions, the trial court relied upon our decision in Theodore v. Zurich General Accident and Liability Insurance Company.[9] There, as in the case at bar, Zurich had promised to defend its insured against any suit "alleging" bodily injury or death even if such suit was "groundless, false, or fraudulent." In holding Zurich had a duty to defend, we said:

> This language means that the obligation to defend exists when the injured party asserts a claim which, as a claim, is for a loss covered by the policy. It is the allegation made in the complaint that controls. If it comprehends an injury that may be within the policy, then the promise to defend includes it. The promise is not contingent upon the allegations being true. It may not be. But the burden of establishing this—in showing that the suit is 'groundless'—is one which Zurich agreed to assume.[10]

7. The trial court held that the wrecker truck driven by Flesher was an "automobile."

8. In findings of fact and conclusions of law, the lower court found that Flesher's "amended answer" and "second amended answer" showed a claim within the policy, that National investigated the case and had access to these pleadings and other facts which were equivocal so far as coverage was concerned, and therefore had a duty to defend.

> More specifically, the court found in part that the answer and a second amended answer * * * made it clear that * * * Flesher was claiming coverage under [National's] * * * policy of insurance.
>
> That [National] * * * conducted an investigation and had access to the complaint, the amended complaints and the amended answers and that it either

knew or should have known that the facts presented by the complaint, amended complaints and amended answers and the investigative facts were equivocal as far as the question of coverage under defendant's policy was concerned.

9. 364 P.2d 51 (Alaska 1961).

10. *Id.* at 55 (footnote omitted).
We also said that:
What is relevant, and the whole point in this case, is that Barbara Theodore's complaint against Cordova stated a claim for relief under the Jones Act; it alleges facts which, if proved, would have supported a recovery under that portion of the policy relating to employer's liability. Under the unambiguous terms of the insurance agreement, Zurich then had the duty to proceed in the defense of the suit—at least to the point of establishing, if it could,

*Theodore* is factually and theoretically distinguishable from the case at bar. In *Theodore*, the complaint alleged facts bringing the claim within policy coverage. In the instance case, National argues that Sterneman's complaint alleged a claim outside the scope of the policy. National emphasizes the point that Sterneman alleged Flesher drove a "wrecking truck" while in the "course and scope of his employment." From this National concludes it had no duty to defend because the allegations in the first and second amended complaints, which asserted that Flesher was driving as an employee of Broadway Cab, clearly take the accident out of the drive-other-cars coverage.[11] Flesher and intervenor Sterneman attempt no refutation of this line of argument, but say that Sterneman's third amended complaint in the negligence action eliminated all allegations that Flesher was acting in the course and scope of his employment for Broadway Cab, thus bringing the claim within policy coverage.[12] This third amended complaint was not made part of the record on appeal. If the third amended complaint is applicable, then the drive-other-cars coverage in the National policy would apply.

■ Appellees' reliance on the third amended complaint is misplaced since our research has disclosed that this pleading was not filed in the negligence action until after Sterneman and Flesher had stipulated to the entry of judgment, Sterneman had covenanted not to execute, and Flesher had assigned his rights against National. In such circumstances, the third amended complaint is not relevant to resolution of the question of whether National had a duty to defend Flesher in the Sterneman's personal injury action. Given only the first and second amended complaints, *Theodore* is factually distinguishable, for these pleadings do not allege a claim within the coverage of the National policy.

This leads to consideration of the problem of articulation of appropriate criteria for determination of an insurer's duty to defend under the standard defense provisions where the relevant pleadings allege a claim falling within an exception to coverage. Our holding in Theodore v. Zurich General Accident and Liability Insurance Company [13] that the standard duty-to-defend policy provision "means that the obligation to defend exists when the injured party asserts a claim which, as a claim, is for a loss covered by the policy" is in accord with the weight of judicial precedent to the effect that the injured third party's pleadings are controlling.[14]

■ We believe that the rule of *Theodore* is sound and should be adhered to where the third party's allegations allege facts within policy coverage despite the insurer's knowledge of facts disclosing a claim outside policy coverage. In this situation *Theodore* comports with the reasonable expectations of the insured as to the defense that will be provided because it is clear that the insurer has promised to defend any suit alleging a claim within the coverage of the policy even if such suit is "groundless, false, or fraudulent." On the other hand, given the adhesion characteristics of an insurance contract, the relative

that the liability upon which the plaintiff was relying was in fact not covered by the policy, and not merely that it might not be.

11. National has not contended that the complaints alleged an accident "arising out of the operation of an automobile * * * repair shop, service station" which would clearly fall outside the scope of the policy.

12. In their brief before this court, appellee Flesher and intervenor Sterneman make the following statement:

It was always possible, and finally the possibility became the reality in the Third Amended Complaint, for Sterneman's lawyer to drop the allegation that Flesher was acting in the course and scope of his employment and thus put him squarely within the terms of the policy.

13. 364 P.2d 51, 55 (Alaska 1961).

14. Fessenden School, Inc. v. American Mut. Liab. Ins. Co., 289 Mass. 124, 193 N.E. 558 (1935); Annot., 50 A.L.R.2d 458, 465–69 (1956).

positions of the insured and the insurer in the context of insurance marketing, and the reasonable expectations of the insured regarding the defense requirements of the policy which he purchased, we are of the further belief that the pleadings criterion of *Theodore* is an inappropriate standard for resolution of duty of defense issues where the injured party's pleadings allege a claim outside of policy coverage. To extend *Theodore* to this situation would frustrate the reasonable expectations of the insured as to the insurer's defense of a suit arising from a factual situation within the policy's coverage, regardless of the injured third party's contrary allegations.

In short, we hold that an insurer must defend when the suit alleges facts within an exception to the policy but the true facts are within, or potentially within, the policy coverage and are known or reasonably ascertainable to the insurer.

In reaching this result, we rely in part on the reasoning of Loftin v. United States Fire Insurance Company[15] and Gray v. Zurich Insurance Company.[16] In the *Loftin* case, the court held that the insurer must defend when the suit alleges facts within an exception to the policy, but the true facts are within the policy coverage and are known or ascertainable to the insurer. It is true that the *Loftin* court found the duty-to-defend clause ambiguous, but we think it of greater significance that the court concluded:

> An insurance policy is a 'contract of adhesion,' prepared by legal draftsmen to be accepted by laymen. * * * Such a contract should be construed as reasonably understood by the insured. * * * In considering the policy as a whole, laymen might well conclude that the company would defend any suit arising from an accidental injury in truth covered by

the policy despite the manner in which the injured party presented his claim, as well as a suit falsely showing coverage.[17]

In Gray v. Zurich Insurance Company, the Supreme Court of California held that the insurer's duty to defend is to be determined "according to the insured's reasonable expectation of coverage." Of importance is the fact that the Supreme Court of California said:

> In interpreting an insurance policy we apply the general principle that doubts as to meaning must be resolved against the insurer and that any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect.

> These principles of interpretation of insurance contracts have found new and vivid restatement in the doctrine of the adhesion contract. As this court has held, a contract entered into between two parties of unequal bargaining strength, expressed in the language of a standardized contract, written by the more powerful bargainer to meet its own needs, and offered to the weaker party on a 'take it or leave it basis' carries some consequences that extend beyond orthodox implications. Obligations arising from such a contract inure not alone from the consensual transaction but from the relationship of the parties.

> Although courts have long followed the basic precept that they would look to the words of the contract to find the meaning which the parties expected from them, they have also applied the doctrine of the adhesion contract to insurance policies, holding that in view of the disparate bargaining status of the parties we must ascertain that meaning of the contract which the insured would reasonably expect.[18]

15. 106 Ga.App. 287, 127 S.E.2d 53 (1962).

16. 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966).

17. Loftin v. United States Fire Ins. Co., 106 Ga.App. 287, 127 S.E.2d 53, 58–59 (1962) (citations omitted).

18. Gray v. Zurich Ins. Co., 65 Cal.2d 263, 54 Cal.Rptr. 104, 107–108, 419 P.2d 168, 171–172 (1966) (footnotes omitted).

As did the *Loftin* court, the California court in *Gray* found the duty-to-defend clause ambiguous. More persuasive is *Gray's* emphasis on the reasonable expectations of coverage on the part of the insured. In this regard, the court in *Gray,* said:

> The very first paragraph as to coverage, however, provides that 'the company shall defend any such suit against the insured alleging such bodily injury' although the allegations of the suit are groundless, false or fraudulent. This language, in its broad sweep, would lead the insured reasonably to expect defense of *any* suit regardless of merit or cause. The relation of the exclusionary clause to this basic promise is anything but clear. The basic promise would support the insured's reasonable expectation that he had bought the rendition of legal services to defend against a suit for bodily injury which alleged he had caused it, negligently, non-intentionally, intentionally or in any other matter.[19]

Also of interest is *Gray's* evaluation of reliance on the allegations of the injured claimant's complaint.

> Defendant cannot construct a formal fortress of the third party's pleadings and retreat behind its walls. The pleadings are malleable, changeable, and amendable. * * *

\* \* \* In light of the likely overstatement of the complaint and of the plasticity of modern pleading, we should hardly designate the third party as the arbiter of the policy's coverage.[20]

We find the *Loftin* and *Gray* rationales based on the weaker party's reasonable expectations of defense coverage in an adhesion contract persuasive, and we conclude that a rule requiring the insurer to provide a defense if the known or reasonably ascertainable facts are within, or potentially within, the coverage of the policy, is more consonant with effectuation of this rationale than a rule which treats the third party's pleadings as determinative of the insurer's duty to defend.[21]

Application of this rule to the case at bar requires reversal of the lower court's grant of summary judgment. There is nothing in the record before us which demonstrates that National actually knew or through a reasonable investigation would have ascertained that the facts of the accident came within, or potentially within, the coverage of the policy it issued to Flesher. Other than the answers Flesher filed to Sterneman's first and second amended complaints, [22] the only other supporting material presented to the trial court in behalf of Sterneman and Flesher's motion for sum-

19. *Id.* 54 Cal.Rptr. at 110, 419 P.2d at 174. *See also* Milliken v. Fidelity & Cas. Co., 338 F.2d 35 (10th Cir. 1964); McGettrick v. Fidelity & Cas. Co., 264 F.2d 883 (2d Cir. 1959); Hardware Mut. Cas. Co. v. Hilderbrandt, 119 F.2d 291 (10th Cir. 1941); Mavar Shrimp & Oyster Co. v. United States Fid. & Guar. Co., 187 So. 2d 871, 874 (Miss.1966); Note, the Duty of An Insurer to Defend Its Insured, 5 Willamette L.J. 321 (1969).

20. Gray v. Zurich Ins. Co., 65 Cal.2d 263, 54 Cal.Rptr. 104, 112, 419 P.2d 168, 176 (1966).

21. R. Keeton, Insurance Law Rights at Variance With Policy Provisions, 83 Harv.L.Rev. 961 (1970); Note, The Insurer's Duty to Defend Under A Liability Insurance Policy, 114 U.Penn.L. Rev. 734 (1966).

22. We do not view Flesher's answers to the first amended and second amended Sterneman complaints as giving rise to a duty to defend on National's part. Once against *Gray* is apposite for in light of the insured understandable desire to have the benefit of the insurer's defense and the plasticity of our rules pleadings, which are modeled after the Federal Rules of Civil Procedure, we believe it unsound to designate the insured as the arbiter of the policy's coverage. *Compare* Mitchell v. Jefferson Water Works, 210 So.2d 146, 149 (La.App.1968).

Where the injured third party's allegations state a claim within an exception to policy coverage but facts known or ascertainable to the insurer disclose a claim within, or potentially within, the policy's coverage, the insurer is confronted with a conflict of interests. Strategically, it is the insurer's benefit to have the

mary judgment in the declaratory judgment action was the affidavit of William M. Erwin, co-counsel for Sterneman. Study of this affidavit shows that it does not meet the standards of Civil Rule 56(e).[23] It is not demonstrably made upon personal knowledge, fails to set forth such facts as would be admissible in evidence, and does not show affirmatively that the affiant is competent to testify as to the matters stated therein.[24] We therefore conclude that the record presented to the trial judge was devoid of any evidence that the insurer had actual knowledge of facts within, or poten-

tially within, the policy's coverage, or that a reasonable investigation on the insurer's part would have led to the ascertainment of such facts. It follows that the superior court's summary determination that National had a duty to defend must be reversed, and remanded for a full evidentiary hearing on the issues of National's duty to defend, coverage, and damages.

Our holding makes it unnecessary to decide several interesting and complex issues concerning whether damages for breach of National's duty to defend could exceed its policy limits.

---

injured plaintiff win his negligence action on the allegations of his complaint without amendment of the same. In such circumstances, the insurer must provide the insured with independent counsel. *Compare*, Ford, The Insurance Contract: The Conflicts of Interest It Breeds, 36 Insurance Counsel Journal 610, 617 (1969).

23. Civ.R. 56(e) provides:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

24. In its pertinent portions, the affidavit of William Erwin reads as follows:

That National Indemnity Company hired Northern Adjusters and Jack Simpson to investigate and adjust Ronald W. Sterneman's claim against

George Flesher. That Northern Adjusters had the full cooperation of George Flesher from the moment he timely reported the Sterneman accident until the judgment was rendered against him in the Sterneman case. That the investigation of Northern Adjusters either did determine or could have determined with reasonable diligence that George Flesher might not have been in the course and scope of his business when driving the Al's East Fifth wrecker which injured Sterneman as is set forth in Flesher's second amended answer. That Northern Adjusters either did determine or could have determined that Flesher was an employee of Broadway Cab Company and that Broadway Cab Company paid Al's East Fifth to tow the wrecked cab from Stirling to Anchorage, and that Flesher was allowed to go on the wrecker only because he was the owner of the cab. That, further, the investigation either did show or would have shown that no one at Al's East Fifth ever gave Flesher permission to drive the wrecker or asked him to do the same and that when he drove the wrecker he drove it on his own and without permission. That the investigation either showed or would have shown that Flesher's relationship to Broadway Cab Company was that of a stockholder and owner of a vehicle used by the cab company. That this investigation either showed or would have shown at least a possibility of coverage for Flesher under the National Indemnity Company policy.