**CHI OF ALASKA, INC., Appellant,**

v.

**EMPLOYERS REINSURANCE CORPORATION, Appellee.**

No. S–4323.

Supreme Court of Alaska.

Jan. 15, 1993.

Brett von Gemmingen, Anchorage, for appellant.

Michael N. White, Nicole R. Faghin, Preston, Thorgrimson, Shidler, Gates & Ellis, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

MATTHEWS, Justice.

A seaman aboard a vessel owned by Oceanic Research Services, Inc. (Oceanic) accidentally sustained serious injuries. Oceanic believed it was insured against the loss by a $500,000 bodily injury insurance policy it purchased through CHI of Alaska, Inc. (CHI). That policy, however, actually had a bodily injury limit of only $100,000. Oceanic sued CHI, asserting contract and negligent tort claims, as well as a claim that CHI had intentionally misrepresented that the policy coverage was $500,000. Oceanic sought compensatory and punitive damages.

CHI tendered the defense of this suit to its liability insurer, Employers Reinsurance Corporation (Employers). Employers agreed to defend CHI, conditional on reserving its rights to disclaim coverage with respect to Oceanic's claim of intentional misconduct. Employers claimed that intentional misconduct would be excluded under the policy if such misconduct was ratified by CHI.

CHI objected, noting that the reservation of rights created a conflict of interest between Employers and CHI, and demanded independent counsel paid for by Employers and selected by CHI. CHI stated that it wanted its personal attorney Brett von Gemmingen to defend it. Employers expressed reservations about von Gemmingen's experience in handling claims of this nature and suggested that CHI provide the names of other attorneys with more experience who might be retained by Employers to defend CHI. This was not acceptable to CHI. Next Employers offered to pay von Gemmingen to defend that portion of the lawsuit pertaining to the intentional misconduct claim while retaining the law firm of Hughes, Thorsness, Gantz, Powell & Brundin to act as co-counsel for CHI with responsibility for the defense of all claims. CHI declined this offer. CHI then brought the present action for declaratory relief, seeking vindication of its position that it is entitled to select independent counsel. In the meanwhile, the Oceanic case has been jointly defended by Hughes Thorsness and von Gemmingen.

CHI and Employers each moved for summary judgment in the present case. CHI contended that there was necessarily a conflict of interest between CHI and Employers respecting the defense of Oceanic's claim because Employers could win either by defeating all claims of liability or by establishing that CHI is liable for intentional misconduct. Given this conflict of interest, CHI contended that Employers should have no role in the selection of defense counsel because any attorney selected by an insurance company "will attempt to help his real client, the insurance company, at the expense of the insured." CHI argued that the retention of von Gemmingen "to defend claims as they are pushed outside the policy coverage does not resolve the conflict." Instead, dual representation, according to CHI, would still permit the at-

torney hired by the insurance company to work against the interests of the insured and in addition would cause confusion concerning who is to control various litigation decisions. In response and in support of its motion for summary judgment, Employers argued that potential conflicts were eliminated by allowing CHI to have its personal attorney handle the non-covered claim at Employers' expense.

The superior court granted Employers' motion for summary judgment. The court ruled that Employers' offer to allow CHI to retain counsel of its choice to defend it on the intentional tort claim adequately resolved potential conflicts of interest. In addition, the court stated that if CHI contends at the conclusion of the Oceanic lawsuit "that a conflict existed despite Employers' action in allowing it to retain its own counsel to defend uncovered claims, then it can raise this issue at the coverage trial." Following the order granting Employers' motion for summary judgment, a final judgment was entered which contained no explicit declaration. CHI has appealed from this judgment.

There are three issues on appeal:

1. Did Employers' reservation of rights to disclaim coverage give CHI a right to retain independent counsel?

2. Does the two-counsel scheme proposed by Employers and approved by the superior court satisfy CHI's right to independent counsel?

3. Does CHI have the unilateral right to select independent counsel?

We turn to a discussion of these issues.

1. *Did Employers' reservation of rights to disclaim coverage give CHI a right to retain independent counsel?*

■ We answer this question in the affirmative.

■ Liability insurers have separate duties to defend and to indemnify their insureds.[1] In order to discharge their duty to defend, insurers hire counsel to conduct the defense of their insureds.[2] Often there is no conflict of interest between the interests of the insurers and the interests of the insureds. Both wish to successfully defend and, if that is not possible, minimize damages.

■ Sometimes, however, the insurer claims that the policy has been breached by the insured. These are so-called policy defenses[3] of which the insured's failure to give notice or to cooperate are typical examples. The insurer may wish to preserve its policy defenses and still provide a defense to the insured. By doing so it may be able to avoid paying the underlying claim either by succeeding in its defense of the insured or, failing that, by successfully asserting its policy defense. The insurer can preserve these options by defending the insured under a reservation of rights to later disclaim coverage if the reservation of rights is acquiesced in by the insured. *Continental Ins. Co. v. Bayless & Roberts, Inc.,* 608 P.2d 281, 288 (Alaska 1980).

■ Similarly, the insurer may claim that although no condition of the policy has been breached by the insured, a particular claim made by the plaintiff does not come within the coverage of the policy. Such defenses are called coverage defenses. The most typical example is the coverage defense in this case where alternative theories of negligent and intentional tort are plead and negligent acts are covered by the policy but intentional acts are not.[4] In such cases the insurer's duty to defend may require it to defend even if the most likely theory of recovery is one for which there is no insurance coverage.[5] The insur-

---

**1.** *Sauer v. The Home Indemnity Co.,* 841 P.2d 176, 180 (Alaska 1992); *Alaska Pac. Assur. Co. v. Collins,* 794 P.2d 936, 945 (Alaska 1990); *National Indem. Co. v. Flesher,* 469 P.2d 360, 366 (Alaska 1970); *Theodore v. Zurich Gen. Accident & Liab. Ins. Co.,* 364 P.2d 51, 55 (Alaska 1961).

**2.** In this opinion we will refer to such counsel as appointed counsel.

**3.** *Continental Ins. Co. v. Bayless & Roberts, Inc.,* 608 P.2d 281, 288–89 (Alaska 1980).

**4.** *See Continental,* 608 P.2d at 289.

**5.** The duty to defend arises "if the complaint *on its face* alleges facts which, standing alone, give rise to a possible finding of liability covered by the policy," *Afcan v. Mutual Fire, Marine &*

er can preserve its coverage defense and fulfill its duty to defend by defending under a reservation of rights to later disclaim coverage if liability is attributable to the excluded theory.

In cases where an insurer asserts either policy or coverage defenses, and defends its insured under a reservation of rights, there are various conflicts of interest between the insurer and the insured. We identified three of these in *Continental.* First, if the insurer knows that it can later assert non-coverage, or if it thinks that the loss which it is defending will not be covered under the policy, it may only go through the motions of defending: "it may offer only a token defense.... [I]t may not be motivated to achieve the lowest possible settlement or in other ways treat the interests of the insured as its own." *Id.* at 289. Second, if there are several theories of recovery, at least one of which is not covered under the policy, the insurer might conduct the defense in such a manner as to make the likelihood of a plaintiff's verdict greater under the uninsured theory. *Id.* Third, the insurer might gain access to confidential or privileged information in the process of the defense which it might later use to its advantage in litigation concerning coverage. *Id.* at 291.

■ Merely because the insurer and the insured have divergent interests when the insurer seeks to defend under a reservation of rights does not necessarily mean that appointed counsel also has conflicting interests. If appointed counsel makes it clear at the outset of his engagement that he is going to be involved only in the defense of the liability claim, not in coverage issues, and that his client is the insured, not the insurer, conflicts should be rare.[6] A number of authorities hold that this is the appropriate role of appointed counsel. For example, the Arizona Supreme Court held that appointed counsel who in the course of

representing the insured gains access to information which may give rise to a policy defense is prohibited from communicating that information to the insurance company. *Farmers Ins. Co. of Arizona v. Vagnozzi,* 138 Ariz. 443, 448, 675 P.2d 703, 708 (1983): "We emphasize that the attorney who represents the insured owes him an undeviating allegiance whether compensated by the insurer or the insured and cannot act as an agent of the insurance company by supplying information detrimental to the insured." Employers agrees with this view, noting that counsel has "an absolute duty of fidelity to the insured over the interests of the insurer."

Other authorities, however, take the view that appointed counsel represents both the insured and the insurer. A former president of the Defense Research Institute has written that appointed counsel has an obligation to disclose to the insurance company information detrimental to the insured. Thomas A. Ford, *The Insurance Contract: The Conflicts of Interest it Breeds,* Ins. Couns.J. 610, 620 (Oct. 1969):

In order for the attorney to perform his role properly, he must never lose sight of the fact that he is working for two different and distinct parties—the insured and the insurer. He must fully disclose to both parties the information he has obtained as a result of his unique relationship with them.

*See also Shafer v. Utica Mutual Ins. Co.,* 248 A.D. 279, 289 N.Y.S. 577, 587 (1936) (appointed attorney acted properly in disclosing to insurer information which enabled insurer to disclaim liability); Alaska Code of Professional Responsibility EC 5–17 (stating that one typically recurring situation involving potentially different interests is dual representation of insured and insurer).

Where there is a conflict between insurer and insured, appointed counsel may tend to

---

*Inland Ins. Co.,* 595 P.2d 638, 645 (Alaska 1979); or, if the complaint does not contain such allegations, where "the true facts are within, or potentially within, the policy coverage and are known or reasonably ascertainable to the insurer." *National Indem. Co. v. Flesher,* 469 P.2d 360, 366 (Alaska 1970).

6. Ronald E. Mallen, *A New Definition of Insurance Defense Counsel,* Ins.Couns.J. 108, 108–109 (Jan. 1986).

favor the interests of the insurer primarily because of the prospect of future employment. *United States Fidelity & Guar. Co. v. Lewis A. Roser Co.,* 585 F.2d 932, 938 n. 5 (8th Cir.1978) ("Even the most optimistic view of human nature requires us to realize that an attorney employed by an insurance company will slant his efforts, perhaps unconsciously, in the interest of his real client—the one who is paying his fee and from whom he hopes to receive future business—the insurance company."); *San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y, Inc.,* 162 Cal.App.3d 358, 208 Cal.Rptr. 494, 498 (1984) (" 'A lawyer who does not look out for the carrier's best interest may soon find himself out of work.' " (quoting the trial court)); Michael A. Berch and Rebecca W. Berch, *Will the Real Counsel for the Insured Please Rise?,* 19 Ariz.St.L.J. 27, 29–30 (1987) ("[T]he attorney's economic interests weigh heavily in favor of the insurer, which, after all, may retain his services in other cases; yet the rules of professional responsibility tip the scales toward the insured."); Arthur P. Berg, *Losing Control of the Defense—The Insured's Right to Select His Own Counsel,* 26 For the Defense 10, 15 (July 1984) ("Although [some] courts seem to trust the insurer and attorney to act in the best interests of the insured, the more common view is that the longstanding ties that defense counsel has with the insurer

will inevitably influence his conduct of the case."); Sampson A. Brown and John L. Romaker, Cumis, *Conflicts and the Civil Code: Section 2860 Changes Little,* 25 Cal. W.L.Rev. 45, 54 (1988) ("The attorney, wishing to maintain the insurer's business, does not want to aggravate the company."); Mark A. Saxon, *Conflicts of Interest: Insurers' Expanding Duty to Defend and the Impact of "Cumis" Counsel,* 23 Idaho L.Rev. 351, 353 (1987) (Insurance counsel's "relationship with the insurer is contractual, usually ongoing, supported by strong financial interests, and often strengthened by sincere friendships.").[7] In recognition of this, most courts hold that in conflict situations the insured has the right to independent counsel to conduct its defense and the insurance company has the obligation to pay the reasonable value of the defense conducted by independent counsel.[8]

■ In dicta in *National Indemnity Co. v. Flesher,* 469 P.2d 360, 367 n. 22 (Alaska 1970), we recognized the right of the insured to independent counsel under circumstances involving a coverage defense: "In such circumstances, the insurer must provide the insured with independent counsel." Ten years later in *Continental Insurance Co. v. Bayless & Roberts, Inc.,* 608 P.2d 281 (Alaska 1980), we recognized the right

7. In addition, at least two of our reported cases demonstrate that appointed counsel sometimes favor the interest of the insurer over those of the insured. *Continental,* 608 P.2d at 294 ("it is quite apparent that both [appointed counsel] and Continental believed that [appointed counsel's] first loyalty was to Continental, and that throughout the course of the litigation he acted for and on behalf of the insurance company"); *Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin,* 828 P.2d 745, 749–50 (Alaska 1992) (appointed counsel proposed to put insured through bankruptcy in order to reduce insurer's liability to plaintiff).

8. "The prevailing view is that the presence of a coverage issue enables the insured to reject appointed counsel, select his own lawyer and control the defense at the expense of the insurer." Mallen, *supra,* at 113; *see, e.g., American Family Life Assur. Co. v. United States Fire Co.,* 885 F.2d 826, 831 (11th Cir.1989) (interpreting Georgia law); *Rhodes v. Chicago Ins. Co.,* 719 F.2d 116, 120–21 (5th Cir.1983) (interpreting Texas law);

*Previews Inc. v. California Union Ins. Co.,* 640 F.2d 1026 (9th Cir.1981) (interpreting California law); *San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y,* 162 Cal.App.3d 358, 208 Cal.Rptr. 494, 501–02 (1984); *Maryland Casualty Co. v. Peppers,* 64 Ill.2d 187, 355 N.E.2d 24 (1976); *Illinois Masonic Medical Ctr. v. Turegum Ins. Co.,* 168 Ill.App.3d 158, 118 Ill.Dec. 941, 522 N.E.2d 611 (1988); *Prashker v. United States Guar. Co.,* 1 N.Y.2d 584, 154 N.Y.S.2d 910, 915, 136 N.E.2d 871, 876 (1956); *Allstate Ins. Co. v. Noorhassan,* 158 A.D.2d 638, 551 N.Y.S.2d 942, 944 (1990); *Gorman v. Pattengell,* 145 A.D.2d 411, 535 N.Y.S.2d 402, 404 (1988); *see also* Todd R. Smyth, Annotation, *Duty of Insurer to Pay for Independent Counsel When Conflict of Interest Exists Between Insured and Insurer,* 50 A.L.R.4th 932, 938 (1986). A minority of courts hold that the insured has no right to independent counsel. Mallen, *supra,* at 113. They rely on appointed counsel to resolve conflicts in favor of the insured. *Id.; see, e.g., Federal Ins. Co. v. X–Rite, Inc.,* 748 F.Supp. 1223, 1229 (W.D.Mich.1990).

of the insured to independent counsel in cases involving policy defenses. However, we reserved the question whether the insured had the same right in coverage defense cases. *Id.* at 289.

In *Continental* the insurer claimed that the insured had breached the cooperation clause of the policy, but offered to defend the insured under a reservation of rights. *Id.* at 283. The insured rejected the insurer's offer of a conditional defense and demanded a defense without a reservation of rights. *Id.* at 286. This the insurer refused to do. *Id.* Subsequently, the insured's personal counsel took over the defense of the case and entered into a settlement which resulted in a consent judgment against the insured. *Id.* In the ensuing litigation between the insured and the insurer, the insurer contended that the insured had breached the insurance policy by refusing to accept the insurer's offer to defend under a reservation of rights. *Id.* at 288. We held that the insured did not breach the policy and that it was within its rights to require the insurer to defend unconditionally or withdraw from the defense. *Id.* at 291. We also affirmed the jury's award which included $4,000 expended by the insured as its defense costs. *Id.* at 296 n. 28.

In reaching this result, we expressed and adopted in policy defense cases the general rule that the insurer must surrender its right to control the defense to the insured if the insured refuses to accept a defense under a reservation of rights:

> [T]he general rule is that, if an insured refuses to accede to the insurer's reservation of rights, the carrier must either accept liability under the policy and defend unconditionally or surrender control of the defense....

*Id.* at 288. We explained in some detail the types of conflicts of interests which arise when the insurer asserts a right to later contest its liability. *Id.* at 289–90. We noted that these conflicts might be avoided if the insured were offered the right to retain independent counsel:

> The possibility of a conflict might be avoided in such cases if the insurance company were to offer its insured the right to retain independent counsel to conduct his defense, and agree to pay all the necessary costs of that defense. In that event, it would seem that the company should be entitled to reserve the right to later litigate an alleged policy defense.

*Id.* at 291 n. 17. As already stated, the holding in *Continental* was limited to policy defenses; the question as to whether the same rules should apply where coverage defenses are involved was reserved. *Id.* at 289.

All three general types of conflicts of interests between insurer and insured which we identified in *Continental*—the insurer may offer mere token defense, the insurer may steer result to judgment under an uninsured theory of recovery, the insurer may gain access to confidential or privileged information which it may later use to its advantage—apply in coverage defense cases. However, the second reason does not apply in policy defense cases. Policy defenses, such as lack of notice or non-cooperation, involve facts which are generally irrelevant to the litigation between plaintiff and the insured. Therefore, appointed counsel has no opportunity to "covertly frame [a] defense to achieve a verdict based upon [a theory under which no coverage would result] so that [the insurer] could later assert that the defense was not covered...." *Id.* at 289. Thus, the need for independent counsel is, if anything, greater in coverage than in policy defense cases.[9] We conclude that the right to independent counsel recognized in *Continental* should also apply to cases involving coverage defenses.[10] We thus adhere to the

---

**9.** *See also* Berch & Berch, *supra,* at 38 ("[policy defense] cases do not present the same dangers [of conflicting interests] that coverage cases present").

**10.** We have recently recognized the application of the right to independent counsel expressed in

*Continental* in the context of a coverage defense case in *Sauer v. The Home Indemnity Co.,* 841 P.2d 176, 182, 183 (Alaska 1992), where we stated:

> However, if the insured does not consent to a non-waiver agreement, or to a defense under a reservation of rights, then the insurance

dicta contained in *National Indemnity,* which we noted above.

### 2. Does the two-counsel scheme proposed by Employers and approved by the superior court satisfy CHI's right to independent counsel?

■ We answer this question in the negative.

The trial court was of the view that neither CHI nor Employers was bound by any determination of fact made in the underlying tort suit concerning whether CHI's conduct was negligent or intentional. From this the trial court concluded that Employers' two-counsel scheme would solve the conflict of interest between the insurer and the insured.[11] The view that issues determined in the initial action as to which a conflict of interest exists between insurer and insured may be subsequently relitigated appears to be sensible and in accordance with a number of authorities.[12] That view, however, does not resolve all conflicts of interest between insurer and insured. It does not alleviate the access of appointed counsel to information in possession of the insured which may be used against the insured in subsequent coverage litigation:

> This solution overlooks the fact that, during the initial litigation, the insured may transmit information to counsel that the insurer could use in subsequent litigation to the insured's disadvantage. A heavy burden of silence falls on the attorney the insurer selects to defend the insured.

Berch & Berch, *supra,* at 32 n. 23. The fact that personal counsel for CHI is acting as co-counsel with counsel appointed by the insurer also does not eliminate this conflict. Appointed counsel has and should have full access to the client so that the defense may be effectively conducted.

Moreover, even where the facts in conflict may be relitigated, the opportunity to direct a case through witness selection, interrogation, and discovery may afford a dispositive advantage in subsequent litigation:

> In such cases, the insured's attorney has the opportunity to develop the facts through discovery and to shape the case for, and present the evidence at, the trial. So even though the insured or the insurer may relitigate the coverage issue in a subsequent proceeding, controlling the

---

> company must choose whether it wishes to defend unconditionally or pursue other options. One such option is to permit the insured to exercise its right to reject the defense offered by the insurer and to obtain substitute counsel at the insurer's expense. In the event the defense is conducted by substitute counsel, the insurance company retains the right to later contest policy coverage. *See Continental Ins. Co. v. Bayless & Roberts, Inc.,* 608 P.2d 281, 291 n. 17 (Alaska 1980).

**11.** As noted earlier, Employers offered to pay CHI's personal attorney, von Gemmingen, to defend against the noncovered claims.

**12.** *See Theodore v. Zurich Gen. Accident & Liab. Ins. Co.,* 364 P.2d 51, 56 (Alaska 1961) (issues determined in initial action as to which interests of insurer and insured were not conflicting held to be binding on insurer); *Farmers Ins. Co. v. Vagnozzi,* 138 Ariz. 443, 448, 675 P.2d 703, 708 (1983); *Ferguson v. Birmingham Fire Ins. Co.,* 254 Or. 496, 460 P.2d 342, 349 (1970); Restatement (Second) of Judgments § 58 (1982). Section 58 of Restatement (Second) of Judgments provides:

> Effect of Judgment Against Indemnitee on Indemnitor Who Has Independent Duty to Defend Indemnitee

> (1) When an indemnitor has an obligation to indemnify an indemnitee (such as an insured) against liability to third persons and also to provide the indemnitee with a defense of actions involving claims that might be within the scope of the indemnity obligation, and an action is brought against the indemnitee involving such a claim and the indemnitor is given reasonable notice of the action and an opportunity to assume its defense, a judgment for the injured person has the following effects on the indemnitor in a subsequent action by the indemnitee for indemnification:

> (a) The indemnitor is estopped from disputing the existence and extent of the indemnitee's liability to the injured person; and

> (b) The indemnitor is precluded from relitigating those issues determined in the action against the indemnitee as to which there was no conflict of interest between the indemnitor and the indemnitee.

> (2) A "conflict of interest" for purposes of this Section exists when the injured person's claim against the indemnitee is such that it could be sustained on different grounds, one of which is within the indemnitor's obligation to indemnify and another of which is not.

defense in the main proceeding could be critical. Testifying under oath in the main proceeding may freeze in the witnesses' minds one version of the facts. Very little latitude may remain in subsequent proceedings to mold the evidence bearing upon coverage.

*Id.* at 37–38.[13]

We conclude therefore that the two-counsel solution does not satisfactorily resolve the conflicts which have given rise to the right to independent counsel.

### 3. *Does CHI have the unilateral right to select independent counsel?*

■ We answer this question in the affirmative.

Most cases which recognize the right to independent counsel express the view that the insured has the right to select independent counsel of its choice. *American Family Life Assur. Co. v. United States Fire Co.,* 885 F.2d 826, 831 (11th Cir.1989) (if insured had rejected conflicted counsel, insurer "would have been obligated to pay" for defense conducted by insured) (interpreting Georgia law); *Rhodes v. Chicago Ins. Co.,* 719 F.2d 116, 120–21 (5th Cir.1983) ("When a reservation of rights is made ... the insured may ... pursue his own defense [and the] insurer remains liable for attorneys' fees") (interpreting Texas law); *Previews Inc. v. California Union Ins. Co.,* 640 F.2d 1026 (9th Cir.1981) ("the insurer's obligation to defend extends to paying the reasonable value of the legal services and costs performed by independent counsel selected by the insured") (interpreting California law); *San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y,* 162 Cal.App.3d 358, 208 Cal.Rptr. 494, 501–02 (1984) ("the insurer must pay the reasonable cost for hiring independent counsel by the insured"); *Maryland Casualty Co. v. Peppers,* 64 Ill.2d 187, 355 N.E.2d 24, 31 (1976) (The insured "has the right to be defended ... by an attorney of his own choice who shall have the right to control

the conduct of the case."); *Illinois Masonic Medical Ctr. v. Turegum Ins. Co.,* 168 Ill.App.3d 158, 118 Ill.Dec. 941, 943, 522 N.E.2d 611, 613 (1988) ("where a conflict of interest exists the insured, rather than the insurer, is entitled to assume control of the defense of the underlying action; ... the insurer must underwrite the reasonable costs incurred by the insured in defending the action with counsel of his own choosing."); *Prashker v. United States Guar. Co.,* 1 N.Y.2d 584, 154 N.Y.S.2d 910, 915, 136 N.E.2d 871, 876 (1956) ("the selection of the attorneys to represent the assureds should be made by them rather than by the insurance company, which should remain liable for the reasonable value of the services"); *Allstate Ins. Co. v. Noorhassan,* 158 A.D.2d 638, 551 N.Y.S.2d 942, 944 (1990) (the insured "should be permitted to select their own attorney [and the insurer] is liable for the reasonable value of the services"); *Gorman v. Pattengell,* 145 A.D.2d 411, 535 N.Y.S.2d 402, 404 (1988) (the insured "is entitled to retain, at her insurer's expense, an attorney with no business connection to her insurance carrier and who will defend solely her interests"); *see also* Mallen, *supra,* at 118 ("The right to independent counsel means an attorney of the insured's choice."); Smyth, *supra,* at 938 ("Most courts appear to allow the insured to select independent counsel when a conflict of interests arises."). Under this line of authority the insurance company is obligated to pay the "reasonable cost for hiring independent counsel by the insured." *Cumis,* 208 Cal.Rptr. at 506; *see also* Mallen, *supra,* at 120.

A recent California case, *Center Foundation v. Chicago Insurance Co.,* 227 Cal. App.3d 547, 278 Cal.Rptr. 13 (App.1991), has noted that the insured's right to select independent counsel is subject to the implied covenant of good faith and fair dealing. In context, this means that the insured must act reasonably to select an attorney who is capable of presenting an effective defense and who will bill reason-

---

**13.** CHI also notes that there are unresolved problems of which of the two counsel is to control discovery and trial strategy. One commentator has noted: "The role of a second law-

yer with clearly antagonistic coverage interests to the insured is uncertain and seems inappropriate." Mallen, *supra,* at 119.

ably for his or her services. The court stated:

> In our view, the duty of good faith imposed upon an insured includes the obligation to act reasonably in selecting as independent counsel an experienced attorney qualified to present a meaningful defense and willing to engage in ethical billing practices susceptible to review at a standard stricter than that of the marketplace. Conduct arguably acceptable in the ordinary attorney-client relationship where the latter pays the former from his own pocket is not necessarily appropriate in the tripartite context created when independent counsel undertakes to represent the insured at the expense of the insurer.

*Center Foundation*, 278 Cal.Rptr. at 21 (footnote omitted).

A few cases support Employers' argument that it should have the right to approve of CHI's choice for independent counsel. In *Employers' Fire Insurance Co. v. Beals*, 103 R.I. 623, 240 A.2d 397, 404 (1968), the court approved of the solution suggested in *Prashker*, that the insured should be allowed to select independent counsel. However, the *Beals* court added the proviso that counsel selected by the insured should be approved by the insurer and that "[s]uch approval, however, should not be unreasonably withheld." *Id.* 240 A.2d at 404. *Fireman's Fund Insurance Co. v. Waste Management of Wisconsin*, 777 F.2d 366 (7th Cir.1985) (apparently interpreting Wisconsin law), involves an atypical fact pattern. The question whether the insurer should have approval rights for independent counsel was not the issue; however, the case does contain dicta which states that giving the insurer the right to approve or disapprove of independent counsel selected by the insured is "fair, sensible and reasonable." *Id.* at 370.

■ We conclude that the insured should have the unilateral right to select independent counsel and that this right should be subject to the implied covenant of good faith and fair dealing.[14] In our view the covenant of good faith and fair dealing in this context requires that the insured select an attorney who is, by experience and training, reasonably thought to be competent to conduct the defense of the insured. Such a result, in our view, fairly balances the interest of the insured—being defended by competent counsel of undivided loyalty—with the interests of the insurer—having the defense of the insured conducted by competent counsel. The insurer is only required to pay the reasonable cost of the defense. *See, e.g., Turegum*, 118 Ill.Dec. at 943, 522 N.E.2d at 613 ("insurer must underwrite reasonable costs incurred by the insured in defending the action"); *Noorhassan*, 551 N.Y.S.2d at 944 (same). This provides a measure of protection for insurers against overbilling—and overlitigating—by independent counsel.

In the present case the record is unclear as to whether it is reasonable for CHI to select von Gemmingen as independent counsel. On remand, a hearing should be conducted promptly in order to determine this question. If the trial court finds that von Gemmingen is a reasonable selection, a declaration should be entered that he may conduct the defense of CHI as independent counsel. If the court finds that he is not a reasonable selection, the court should so declare and CHI should proceed to select qualified counsel.

For the above reasons the judgment of the superior court is REVERSED and this case is REMANDED for further proceedings and entry of a declaration in accordance with this opinion.

MOORE, J., concurs in part and dissents in part.

COMPTON, J., dissents.

MOORE, Justice, concurring in part and dissenting in part.

In its decision today, the court holds that an insured has the right to reject the counsel appointed by the insurer and to unilat-

---

**14.** We have held that the implied covenant of good faith and fair dealing is inherent in all contractual relationships including the insured-insurer relationship. *Guin v. Ha,* 591 P.2d 1281, 1291 (Alaska 1979).

erally select replacement counsel whenever dual representation creates a potential conflict of interest. Under the guise of balancing the interests of the insured and the insurer, the court completely abrogates the insurer's right to participate in the insured's defense. Neither existing case law nor sound policy mandates such a drastic curtailment of the insurer's contract rights. Although I agree that the insured is entitled to select independent counsel in conflict of interest situations, I believe the insurer retains the right of reasonable approval. Such a rule accommodates both the important interest of the insured in controlling the litigation and the legitimate interest of the insurer in assuring that the defense will be competently handled by qualified counsel in a cost-effective manner.

Most courts agree that an insured may reject insurer-selected counsel when the insurer assumes the defense under a reservation of rights because of a coverage question.[1] *See* Ronald E. Mallen, *A New Definition of Insurance Defense Counsel*, 53 Ins.Couns.J. 108, 113 (Jan. 1986). Most

courts also conclude that the presence of a conflict of interest does not relieve an insurer of its obligation to pay defense costs under its duty to defend. *See Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531, 538 (8th Cir.1970). The critical issue, which few courts have identified, is whether, in this context, an insured has the *unilateral* right to select replacement counsel when the insurance agreement gives the insurer the right to defend the insured. This is a matter of first impression in Alaska.[2] I would hold that the insurer has the right to approve the counsel selected by the insured, but that the insurer may not unreasonably withhold such approval.[3]

The court simply fails to recognize that Employers has both a contractual right as well as the contractual duty to defend CHI.[4] An insurer's right to control the defense is "a valuable one in that it reserves to the insurer the right to protect itself against unwarranted liability claims and is essential in protecting its financial interest in the outcome of litigation." 7C John A. Appleman, *Insurance Law and Practice* § 4681 (Walter F. Berdal ed., rev.

1. The mere reservation of rights in response to a third party complaint alleging covered and uncovered conduct does not in and of itself create a conflict of interest warranting withdrawal of counsel selected by the insurer. Because the liberal rules of pleading permit third party plaintiffs to allege a variety of legal theories, the pleading alone should not be permitted to precipitate a conflict of interest between an insurer and the insured requiring withdrawal of the attorney chosen by the insurer. Nor should the mere fact that an attorney has previously been utilized by an insurer have this effect. Clearly, under the circumstances of this case, an attorney has an obligation to make the insured and the insurer aware of the potential for conflict and to proceed with the representation only with the consent of both. Alaska Code of Professional Responsibility DR 5-105. This is a continuing duty so the appropriateness of representation will have to be constantly monitored by counsel.

2. CHI, citing *National Indem. Co. v. Flesher*, 469 P.2d 360, 367–68 n. 22 (Alaska 1970) and *Continental Ins. Co. v. Bayless & Roberts, Inc.*, 608 P.2d 281, 291 n. 17 (Alaska 1980), contends that we have previously held that an insured has a right to select independent counsel in a conflict of interest situation. Neither of the passages cited by CHI constitutes a holding of this court,

as the issue the court decides today was not before us in either *Continental* or *Flesher*. These passages are thus not dispositive of this issue.

3. Other alternatives also balance the interests of the insurer and the insured. For example, the insured could agree to proceed with an attorney of its choice to serve as co-counsel to the insurer-selected attorney. Here, because CHI rejected this alternative, I limit my discussion to the approach to be taken when the insured rejects the co-counsel approach.

4. Section II of the contract of insurance between CHI and Employers provides that

[Employers], in Insured's name and behalf, shall have the right to investigate, defend and conduct settlement negotiations in any claim or suit.

. . . . .

The Insured shall not admit liability for, or make any voluntary settlement, or incur any costs or expenses in connection with any claim involving payment by [Employers], except with the written consent of [Employers]. Section III obligates Employers to pay "all expenses incurred in the defense of any claim or suit against Insured" alleging acts covered by the policy.

ed. 1979). Such an important right should not be ignored in the analysis. Although the insurer's right to control the litigation must yield to the insured's right to independent representation when a conflict arises, this does not mean that the insurer's right to defend is completely extinguished.

Although the court purports to align itself with what it considers to be the "majority view," an analysis of the cases it relies on reveals that most courts which have recognized the insured's "right to independent counsel" have not explicitly analyzed the scope of this right or fully considered its impact on the rights of the insurer.

Two cases cited by the court, while speaking of a "right to independent counsel," implicitly recognize the right of an insurer to participate in the defense of its insured. The courts in both *American Family Life Assur. Co. v. U.S. Fire Co.,* 885 F.2d 826 (11th Cir.1989), and *San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y, Inc.,* 162 Cal.App.3d 358, 208 Cal. Rptr. 494 (1984), required an insurer to pay the cost of "independent counsel" selected by the insured to act as co-counsel with an attorney selected by the insurer.[5] Neither case stands for the proposition that an insured has a unilateral right to select exclusive defense counsel when a coverage dispute creates a conflict of interest.[6] In fact, *American Family Life* includes a partial quote from Appleman which recognizes the right of an insured "to refuse to accept an offer of counsel appointed by the insurer," 885 F.2d at 831 (citing 7C Appleman, *supra,* § 4685.01), but omits that part of the sentence which recognizes the insurer's

**5.** In *American Family Life,* the court affirmed an award of attorneys' fees to an insured who hired co-counsel to "monitor and aid in the defense" provided by the insurer. 885 F.2d at 831. In *Cumis,* the court held that the insurer must pay the fees of an attorney retained by the insured to act as co-counsel to the attorney selected by the insurer. 208 Cal.Rptr. at 497, 506.

**6.** The other cases cited for the "majority view" do not hold that an insured has the unilateral right to select defense counsel to the exclusion of any right of the insurer to participate in the defense.

In *Rhodes v. Chicago Ins. Co.,* 719 F.2d 116 (5th Cir.1983), an insured rejected the insurer's tender of a defense under a reservation of rights and pursued its own defense. The party injured by the insured sued the insurer to collect damages assessed against the insured under a settlement approved by the state court. The Fifth Circuit reversed the grant of summary judgment for the insurer, finding unresolved issues of material fact. The right to "independent counsel" was not even an issue in the case; rather, the issue was whether the insurer had breached a duty to defend, and if so, the consequences of the breach. *Id.* at 119.

In *Previews, Inc. v. California Union Ins. Co.,* 640 F.2d 1026, 1028 (9th Cir.1981), the court, interpreting California law, concludes with little discussion that a conflict existed, that the insured "was entitled to engage outside counsel," and that the insurer was responsible for "reasonable value of the legal services and costs performed by independent counsel selected by the insured."

In *Maryland Casualty Co. v. Peppers,* 64 Ill.2d 187, 355 N.E.2d 24, 30–32 (1976), the court held that an insured had the right to select independent counsel and control the case in cases of potential conflict of interest. However, the court also explicitly recognized the insurer's right to have its attorney participate "in all phases of [the] litigation subject to the control of the case by [the insured's] attorney." *Id.* 355 N.E.2d at 31.

In *Illinois Masonic Medical Ctr. v. Turegum Ins. Co.,* 168 Ill.App.3d 158, 118 Ill.Dec. 941, 948–49, 522 N.E.2d 611, 618–19 (1988), the court held that, under *Maryland Casualty,* an insured may select its own attorney and control its defense in conflict situations. The court also held that it was within the discretion of the replacement counsel to determine to what extent the counsel appointed by the insurer and rejected by the insured could also participate in the defense. *Id.*

In *Prashker v. U.S. Guar. Co.,* 1 N.Y.2d 584, 154 N.Y.S.2d 910, 136 N.E.2d 871 (1956), the question of the right of the insured to select independent counsel was not directly before the court. The court stated in *dicta* that in a conflict of interest situation, the insured, rather than the insurer, should select defense counsel. *Id.* 154 N.Y.S.2d at 915, 136 N.E.2d at 876. The court provided no analysis, reasoning, or authority to support its statement.

In *Gorman v. Pattengell,* 145 A.D.2d 411, 535 N.Y.S.2d 402, 404 (1988), the court summarily concluded, citing *Prashker,* that the insured is entitled to independent counsel at the insurer's expense where there is a conflict of interest.

In *Allstate Ins. Co. v. Noorhassan,* 158 A.D.2d 638, 551 N.Y.S.2d 942, 944 (1990), the court stated without explanation or analysis that an insured has the right to select independent counsel and the insurer has the duty to pay for this defense whenever a potential conflict of interest arises.

right to approve of substitute counsel.[7]

Some courts and commentators recognize that cases permitting an insured to select "independent counsel" do not define what is meant by that term. *See, e.g., Federal Ins. Co. v. X–Rite, Inc.,* 748 F.Supp. 1223, 1228 n. 1 (W.D.Mich.1990) (" 'Independent Counsel' is a term which has not been defined in the case law."); Allan D. Windt, *Insurance Claims and Disputes—Representation of Insurance Companies and Insureds* § 4.20 at 179 (2d ed. 1988). Courts have used the phrase in a variety of contexts,[8] some of them diametrically opposed. Commentators have stated that "[t]he right to independent counsel means an attorney of the insured's choice." Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 23.16 at 418 (3d ed. 1989). On the other hand, courts have also recognized "a right in the insurer to determine whether to provide independent counsel of its choosing or to reimburse the insured for counsel of its choice." *Federal Ins. Co.,* 748 F.Supp. at 1228 (citing nine cases for this proposition). Because there is disagreement as to what the right to independent counsel entails, and because many cases recognize the insurer's right to select replacement "independent counsel," or at a minimum, to participate in the defense of the insured alongside counsel selected by the insured, it is questionable whether the view espoused by the court represents a "majority view," statements by courts and commentators to that effect notwithstanding.

However, if, as the court apparently believes, an insured's interest in fair representation requires the complete abrogation of an insurer's right to participate in the defense, the insurer's right should at least

be addressed in terms of established principles of contract law. In interpreting a contract, a court must give effect to the reasonable expectation of the parties. *Peterson v. Wirum,* 625 P.2d 866 (Alaska 1981); *Fairbanks N. Star Borough v. Tundra Tours, Inc.,* 719 P.2d 1020 (Alaska 1986) (in order to give effect to the parties' reasonable expectations, a court should look to the contract language, relevant extrinsic evidence and case law interpreting similar provisions). Clearly, the insurance agreement here gave Employers a reasonable expectation that it would have some control over the defense. Even if the right to defend provision is deemed ambiguous and is therefore construed against the insurer, *see Puritan Life Ins. Co. v. Guess,* 598 P.2d 900 (Alaska 1979), it is not necessary to extinguish the right entirely. Rather, the right to defend provision can and should be interpreted in a way which balances the interests of both the insurer and the insured.

As one court has stated when considering the scope of an insurer's contractual right to defend in conflict situations:

> Unless "right to defend" is to be deemed mere surplusage, ... it must be viewed as conferring upon [the insurer] some prerogative with respect to the defense beyond simply paying expenses. This prerogative cannot, in a conflict of interest situation, include an absolute right to control the litigation. On the other hand, [the insured's] apparent presumption that the conflict of interest, posing a potential of prejudice to its interests, automatically and completely negated all prerogative, is not reasonable.
>
> ... [The] "right to defend" can hardly be deemed to contemplate anything less

---

**7.** The full sentence from Appleman reads:

> But it has been held that where a conflict of interest exists between the insurer and the insured in the conduct of the defense of the action brought against the insured, the insured has the right to refuse to accept an offer of the counsel appointed by the insurer and insurer's desire to control the defense must yield to its obligation to defend the policyholder; and where a conflict of interest exists *the engagement of independent counsel to represent the insured should be approved by the*

> *insurer to assure the employment of competent counsel. Such approval should not be unreasonably withheld.*

7C Appleman, *supra,* § 4685.01 (emphasis added) (footnotes omitted).

**8.** The "right to independent counsel" could be read narrowly to mean the right to reject an insurer's choice of attorney. It could be read more broadly to encompass the right to select substitute or replacement counsel, either unilaterally or subject to the approval of the insurer.

than participation in selection of counsel, which contractual right ought to be enforced unless contrary to public policy. *Federal Ins. Co.*, 748 F.Supp. at 1229; *see also New York State Urban Dev. Corp. v. VSL Corp.*, 738 F.2d 61, 65–66 (2d Cir. 1984). Here, Employers' right to participate in CHI's defense should encompass, at a minimum, the right to have a role in the selection of defense counsel.

Courts which have recognized the right of the insurer to participate in the selection of substitute counsel do not agree as to the latitude an insurer should have. In *Federal Ins. Co.*, the court concluded that, under Michigan law, an insurer is entitled to select replacement counsel, but its selection must be made with the utmost of good faith. 748 F.Supp. at 1229. On the other hand, in *Employers' Fire Ins. Co. v. Beals*, 240 A.2d 397 (R.I.1968), the court held that an insured may elect to choose its own counsel, but that the insurer has a right to approve of the counsel selected by the insured. The *Beals* court stated:

> Because the insurer has a legitimate interest in seeing that any recovery based on finding of negligence on the part of its insured is kept within reasonable bounds, and since the total expense of this defense is to be assumed by the insurer under its promise to defend, we believe that … the engagement of an independent counsel to represent the insured should be approved by the insurer. Such approval, however, should not be unreasonably withheld.

240 A.2d at 404; *see Fireman's Fund Ins. Co. v. Waste Management of Wis. Inc.*, 777 F.2d 366, 370 (7th Cir.1985) (approving parties' agreement to allow insured to select replacement counsel subject to insurer's approval as the most "fair, sensible, and reasonable way for both parties to terminate [conflict of interest] dispute and to get on with trial of the [cases against insured] on their merits"). This approach is also recommended by a noted commentator on insurance law who stated:

> [W]here a conflict of interest exists between the insurer and the insured in the conduct of the defense of the action brought against the insured, the insured has the right to refuse to accept an offer of the counsel appointed by the insurer and insurer's desire to control the defense must yield to its obligation to defend the policyholder; and where a conflict of interest exists the engagement of independent counsel to represent the insured should be approved by the insurer to assure the employment of competent counsel. Such approval should not be unreasonably withheld.

7C Appleman, *supra*, § 4685.01 (footnotes omitted).

The majority dismisses these authorities without analysis, summarily concluding that the insurer's interests are sufficiently protected by the implied covenant of good faith and fair dealing inherent in all contracts. Principally relying on a recent California court of appeals decision, *Center Found. v. Chicago Ins. Co.*, 227 Cal.App.3d 547, 278 Cal.Rptr. 13 (1991), the majority observes that the covenant of good faith and fair dealing requires that the insured "select an attorney who is, by experience and training, *reasonably thought to be competent to conduct the defense of the insured.*" [9] (emphasis added) The majority asserts that the implied covenant "provides a measure of protection for insurers against overbilling—and overlitigating—by independent counsel."

Unfortunately, the majority fails to specify by whose standards the competency of replacement counsel should be measured.

---

9. In *Center Foundation,* the insureds filed a claim for breach of contract against the insurer after the insurer refused to accept the independent counsel selected by the insureds when the insurer reserved the right to contest coverage. 278 Cal.Rptr. at 15–16. Under the California law operative at the time of the litigation, the court of appeals held that the implied covenant of good faith and fair dealing required the insured to act reasonably in selecting independent counsel. *Id.* at 21. The court concluded that the insurer therefore did not breach its obligations to the insured by asserting a right to approve the counsel they selected provided that such approval was not unreasonably withheld. *Id.* The *Center Foundation* court cited with approval the *Beals* decision and explicitly recognized the insurer's right to approve the replacement counsel selected by the insured. *Id.* at 21 & n. 12.

In the absence of any objective criteria by which to judge whether replacement counsel is "reasonably competent," I believe that this "measure of protection" is both inadequate and unworkable.

Although I have found no cases discussing what constitutes an insurer's reasonable withholding of approval of substitute counsel chosen by the insured, I believe that an insurer should approve of an insured's selection of counsel where the attorney is qualified to handle the case and where there is no reason to expect that the attorney will be unable to maintain a professional working relationship with the insurance company.

In ascertaining whether an attorney is qualified, it may be useful to look to the statute of a state which has turned to the legislature to resolve this issue. California Civil Code Section 2860(c)[10] provides in part:

> When the insured has selected independent counsel to represent him or her, the insurer may exercise its right to require that the counsel selected by the insured possess certain minimum qualifications which may include that the selected counsel have (1) at least five years of civil litigation practice which includes substantial defense experience in the subject at issue in the litigation, and (2) errors and omissions coverage.

While I would not adopt this standard as a *per se* rule in Alaska, I believe that section 2860(c) provides reasonable guidance as to whether an insurer must approve of its insured's selection of substitute counsel.

Here, it is undisputed that attorney Von Gemmingen graduated from law school in May, 1985. When this dispute arose in late 1989, he had been practicing law for approximately four years. Nothing in the record indicates that he had substantial defense experience in the types of disputes at issue in the suit against CHI. For these reasons, I would hold that Employers did not unreasonably withhold its approval of CHI's choice of attorney.

Apparently, the court believes that any participation by the insurer in the appointment of independent counsel automatically taints the outcome. However, it is far from clear that the scope of the conflict of interest problem in the defense context is so broad and the frequency of harm to the insured so great as to warrant such a drastic curtailment of the insurer's contract rights. None of the authorities cited by the court address the prevalence of the problem in quantifiable terms, nor do they address effectiveness of malpractice actions, disciplinary actions, or insurance bad faith actions in remedying the problem. As one commentator has noted, "[t]he validity of the assumption that there exists a severe risk that an insurer will favor its coverage interests over the insured's liability has not been critically examined." Mallen, *supra*, at 108. The same can be said of the assumption that there is a severe risk that defense attorneys will favor the interests of the insurer over the insured.[11] Assuming without conceding that these

---

**10.** California Civil Code § 2860 was a legislative response to the flood of litigation spawned by the California court of appeals decision in the case of *San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 162 Cal.App.3d 358, 208 Cal.Rptr. 494 (1984). *See* Sampson A. Brown & John L. Romaker, *Cumis, Conflicts and the Civil Code: Section 2860 Changes Little*, 25 Cal. W.L.Rev. 45 (1988). The *Cumis* court held that an insurer who assumed a defense under a reservation of rights must pay the reasonable cost of "independent counsel" hired by the insured. 208 Cal.Rptr. at 506. The *Cumis* decision created considerable confusion, led to abuses by insurers and attorneys selected by insureds, and probably had an adverse economic impact on the public. Brown & Romaker, *supra*, at 63–68.

The majority opinion is likely to have similar effects in Alaska and will probably require legislative intervention to ultimately bring fairness and order to this complex area of law.

**11.** It seems an equally probable danger that an "independent" attorney selected by the insured would have an interest in favoring the insurer in the hope of establishing a continuing relationship with the insurer, while his relationship with the insured is likely to be transitory. After all, it is the insurer who pays "independent" counsel's fees, too. The rule adopted by the majority does not address this danger and is a radical step which will be of doubtful effectiveness in resolving a problem which may be more pervasive in the minds of academicians than in the real world.

risks are great, conflict of interest concerns would be a compelling policy reason for permitting an insured to reject counsel selected by the insurer. They would also be a reason for allowing the insured to select a new attorney at the insurer's expense. But it goes too far to ignore the insurer's contractual right to defend and to hold that these perceived dangers warrant allowing an insured to unilaterally select substitute counsel regardless of the attorney's qualifications.

In *Continental Ins. Co. v. Bayless & Roberts, Inc.*, 608 P.2d 281, 288–91 (Alaska 1980), we discussed the conflicts which can arise between the interests of the insured and the insurer where coverage may be an issue and the insurer defends under a reservation of rights. We noted that when an insurer knows it can assert a coverage defense, it may only offer a token defense of the insured. *Id.* at 289. We further noted that where coverage depends on which theory of recovery in the suit against the insured is successful, an insurer might conduct the defense in a way which steers the case toward liability based on an uncovered theory. *Id.* The situations discussed in *Continental* represent two distinct areas of conflict—those between an insured and its insurer and those between the insured and its attorney. When this important distinction is made, an attorney's ethical obligations in these situations are clearly delineated by the Alaska Code of Professional Responsibility.

A potential conflict of interest between the insurer and the insured arises when, as in this case, a plaintiff brings an action against an insured which is based on both covered and uncovered theories of liability. When the complaint alleges both negligent conduct, which is covered under the policy, and intentional conduct, which is not covered, it would be in the best interest of the

insurer if liability were ultimately found based on intentional conduct. In such a case, an attorney selected by the insurer to defend the insured would be under an ethical obligation to disclose the effect of this conflict "on the exercise of [the attorney's] independent professional judgment on behalf of each." Alaska Code of Professional Responsibility DR 5–105. Unless "it is obvious that [the attorney] can adequately represent the interest of each" and "each consents to the representation after full disclosure," the attorney would be required to decline the employment.[12] *Id.* Whether the attorney declines, accepts, or withdraws from the employment, he would be obligated to preserve the confidences of the insured. Alaska Code of Professional Responsibility DR 4–101.

The conflict between the insured and the insurer is to be distinguished from that which arises between the insured and the attorney under these circumstances. As commentators have stated:

> In this situation, ... separate counsel retained by the insurance company is under the less-than-subtle influence of the insurance company. Insurance companies concentrate their legal representation into a few firms. The attorney, wishing to maintain the insurer's business, does not want to aggravate the company. Furthermore, the insurance counsel has close ties and a long-term relationship with the insurer, while he has only a transient relationship with the insured. These factors could, unconsciously, dilute the loyalty of the most honest attorney.

Sampson A. Brown & John L. Romaker, *Cumis, Conflicts and the Civil Code: Section 2860 Changes Little*, 25 Cal.W.L.Rev. 45, 54 (1988) (footnotes omitted). Here again, the attorney's duties are clear. If

---

12. DR 5–105 applies to the situation in which a lawyer represents two clients. In the circumstances discussed here, the attorney has but one client, the insured. *See Tank v. State Farm Fire & Casualty Co.*, 105 Wash.2d 381, 715 P.2d 1133, 1137 (1986) ("Both retained defense counsel and the insurer must understand that only the *insured* is the client."). Nonetheless, DR 5–105 is applicable by virtue of the obligations the attor-

ney has toward the insurer as a result of the insurance agreement between insurer and insured. While we need not decide the scope of that obligation here, at a minimum it encompasses a duty to communicate with the insurer, to share non-confidential and unprivileged information regarding the case with the insurer, and to cooperate with the insurer in efforts to settle the case.

the exercise of the attorney's professional judgment on behalf of the insured may be affected by these interests, an attorney can only accept the employment if the client consents after full disclosure. Alaska Code of Professional Responsibility DR 5–101(A). Furthermore, the attorney is prohibited from permitting the insurer to "direct or regulate his professional judgment" in representing the insured. Alaska Code of Professional Responsibility DR 5–107(B). A breach of these ethical obligations may subject an attorney to disciplinary actions and may serve as the basis for a legal malpractice action, thus serving as a deterrent to the kinds of abuses which concern the court. Absent a showing that the Code of Professional Responsibility and the threat of legal malpractice actions are ineffective in preventing such abuses, the broad prophylactic rule adopted by the court seems superfluous.[13]

In further support of its conclusion, the majority voices its concern over the danger that an insurer might gain access to information not otherwise available to it which could be used to its advantage in the coverage dispute. In *Continental* we discussed this danger in the policy defense context. 608 P.2d at 291. However, in the context of a coverage dispute, I believe this danger to be more imagined than real. It is difficult to imagine a case or set of facts where information tending to defeat coverage would be unavailable to the insurer. Under most insurance agreements, the insured has a duty to cooperate with the insurer.[14] "The duties of the insured have been held to require a fair, frank and truthful disclosure of information reasonably demanded by the insurer, for the purpose of enabling it to determine whether or not

there is a genuine defense." 8 John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 4774 (1981). In addition, facts tending to defeat coverage will most likely be developed in the liability trial and will be discoverable by the insurer in subsequent coverage litigation.[15] Even confidential attorney-client communications may be discoverable by an insurer under certain circumstances. *See, e.g., Glacier Gen. Assur. Co. v. Superior Court,* 95 Cal.App.3d 836, 157 Cal.Rptr. 435 (1979). *See generally* John P. Ludington, Annotation, *Insured–Insurer Communications As Privileged,* 55 A.L.R. 4th 336, 354–59 (1987).

Of course this does not mean the insured's attorney is free to share any confidential or privileged information with the insurer. Regardless of whether defense counsel is selected by the insured or the insurer, the attorney is bound by the same ethical duties regarding confidentiality. *See* Alaska Code of Professional Responsibility DR 4–101. In those rare cases where such a breach of confidentiality actually occurs, the law affords adequate protection and recourse to the insured. An attorney who breaches a client's confidentiality may be subject to discipline for a violation of his professional responsibility or to a suit by the insured for legal malpractice. Of more significance to the insured, an insurer who relies on breach of confidentiality by defense counsel to assert non-coverage may be subsequently estopped from denying coverage based on policy exclusion. *See Parsons v. Continental Nat'l Am. Group,* 113 Ariz. 223, 228, 550 P.2d 94, 99 (1976). Such remedies serve as adequate protection of the insured and as a strong disincentive

---

**13.** While that case did not involve the same type of conflict of interest present here, this court's recent decision in *Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin,* 828 P.2d 745 (Alaska 1992) suggests that existing law is adequate to remedy the abuses of attorneys and insurers who compromise the interest of the insured.

**14.** The agreement between CHI and Employers provided:
[CHI] shall cooperate with [Employers], and upon [Employers] request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, ob-

taining the attendance of witnesses and in the conduct of suits.

**15.** In the typical coverage dispute case where the party suing the insured alleges both intentional and negligent conduct, the plaintiff has a strong interest in developing facts indicating intentional conduct, as this enhances the strength of the plaintiff's case and may be a basis for an award of punitive damages. Such facts would be discoverable by the insurer in subsequent coverage litigation with the insured.

to both insurers and defense counsel to compromise the insured's interest.

Other considerations prevent me from supporting the rule adopted today. First, "[t]ypically, the coverage issue [and resulting conflict of interest are] not created by the insurer but by the allegations of the claimant. Often those allegations bear little relationship to reality." Mallen & Smith, *supra,* § 23.16. In light of this, a rule which operates to deprive an insurer of its contractual right to participate in the defense whenever the insurer reserves its rights unnecessarily penalizes the insurer. Second, an insurer may be required to issue a reservation of rights letter or risk its right to later challenge coverage of the claim under the policy. *See Continental Ins. Co. v. Bayless & Roberts, Inc.,* 608 P.2d 281, 289 n. 13 (Alaska 1980). The insurer should not be forced to sacrifice its right to participate in the selection of counsel in order to preserve its right to subsequently contest coverage. Third, because an insurer, under agency principles, may be subject to liability for the malpractice of the attorney which represents the insured, *see* Mallen & Smith, *supra,* § 23.6, it is fair and reasonable that the insurer should have a role in selection of counsel. Finally, the rule adopted by the court today presupposes that no counsel selected or approved of by an insurer can represent an insured without consciously or unconsciously compromising the insured's interests in favor of those of the insurer. My confidence in the integrity of the members of the Alaska Bar will not allow me to support the adoption of a rule of law based on such an assumption.

In summary, I would hold that CHI was within its rights to reject the tender of a defense by Employers and was entitled to select replacement counsel, subject to the reasonable approval of Employers. Here, Employers' approval of Von Gemmingen was not unreasonably withheld. Nonetheless, because I conclude that the insured has the right to select replacement counsel subject to the reasonable approval of the insurer, CHI cannot be forced to proceed with defense counsel selected by Employers. Accordingly, I concur in the reversal but dissent from the court's reasoning and the rule of law which it adopts.

COMPTON, Justice, dissenting.

I agree with Justice Moore's analysis of the court's opinion. While I prefer his solution to that selected by this court, I believe a third alternative selected by the superior court is preferable to either. Also, I wish to emphasize what I find particularly disturbing with the court's solution.

Since the court abrogates entirely a contractual right, the language of the insurance contract ought at least be reviewed. It provides:

### SECTION II

DEFENSE AND SETTLEMENTS. The *Corporation,* in the Insured's name and behalf, *shall have the right to* investigate, *defend* and conduct settlement negotiations in *any* claim or *suit.*

The Corporation shall not settle any claim without the consent of the Insured. Should the Insured refuse to consent to any settlement recommended by the Corporation and elect to contest the claim, or continue any legal proceedings in connection with such claim, the Corporation's liability for the claim shall not exceed the amount in excess of the Insured's deductible for which the claim could have been so settled, or the applicable limit of liability, whichever is less, plus the costs and expenses incurred with its consent up to the date of such refusal.

The *Insured shall not* admit liability for, or *make any voluntary settlement,* or incur any costs or expenses in connection with any claim involving payment by the Corporation, *except with the written consent of the Corporation.*

(Emphasis supplied).

The court holds that the insurer forfeits the right even to participate in the selection of counsel, encompassed in the insurer's right to defend, (1) despite its contractual right to do so; and (2) despite the fact that as to covered claims, it is undisputed that

the insurer's money is at risk, not the insured's.[1]

Justice Moore has highlighted the flaw in the court's effort to legitimize its result by proclaiming the result to be in keeping with the "majority view." As the result is not dictated by case law, what compels the court to hold that the insurer has forfeited its contractual right to select counsel to defend covered claims for which its money is at risk?

The court points to perceived problems with selection of counsel hired by insurers to conduct the defense of their insured. These "appointed" counsel may tend to favor the insurer's interests, not the insured's, because of longstanding ties between the insurer and counsel. Appointed counsel may consciously or subconsciously 'slant' efforts in favor of the insurer to receive future business from the insurer. Ongoing contractual relationships, strong financial ties, and sincere friendships between the insurer and appointed counsel will influence counsel's conduct.

To cure this problem, the court first implies a contractual right in the insured to select "independent" counsel to represent the insured on both covered and reserved claims. To modify this implied right, the court then applies the implied covenant of good faith and fair dealing. The insured must "select an attorney who is, by experience and training, reasonably thought to be competent to conduct the defense of the insured." "[T]hought" by whom to be competent? The court does not give an answer.

I do not doubt the potential for conflict of interest problems to intrude into relationships between the insurer, the insured and appointed counsel. Yet given the court's view of the willingness of counsel to follow the dollar and not the Code of Professional Responsibility, why does the court not apply the same standard to independent counsel selected by the insured? If counsel selected by the insured 'slants' efforts in favor of the insured, is this a less disturbing result? If ongoing contractual relationships, strong financial ties, and sincere friendships between the insured and independent counsel influence counsel's conduct, is this a less disturbing result? Worse, if an insured does not happen to be a significant factor in independent counsel's financial wellbeing, counsel selected by the insured may (consciously or subconsciously) curry favor with the insurer in order to establish an ongoing contractual, financially rewarding relationship with the insurer. Is this a less disturbing result? The dollar still comes out of the same pocket. Once the Code of Professional Responsibility is discarded as setting ethical guidelines for the profession, no attorney/client relationship is safe from manipulation.

The alternative suggested by Justice Moore, but rejected by the court, *does not* contemplate selection of counsel by an insurer. The insured would select counsel, subject to the insurer's approval. Approval could not be unreasonably withheld. Counsel would be paid for by the insurer. Yet in the court's view, permitting the insurer to approve independent counsel selected by the insured would still taint counsel.

In my view the interests of both the insurer and insured would be better served if this court, the insurer, and the insured acknowledged the irremedial conflict created when reserved claims are asserted against the insured. The insured should be entitled to select counsel, paid for by the insurer, to represent it on the reserved claims, subject only to the insured's contractual obligation to cooperate with the

---

1. Interestingly the court affords CHI a right which it did not believe it had, and which it claimed not to be asserting if it did. In a letter from Lee Houston of Clement–Houston Insurance, Inc. (CHI of Alaska, Inc.) to counsel initially selected by Employers, Houston remarks:

> I said, as I am repeating here, that we preferred having our own lawyer. Now—you are twisting this around to indicate we have

terminated you. This is not true. I doubt the policy gives us authority to unilaterally dismiss counsel ... and we are not going to try to do so.

Houston doubted too much. Not only did CHI have the right to unilaterally dismiss counsel selected by Employers, but also it had the unfettered right to unilaterally select counsel regardless of its policy with Employers.

insurer.[2] The insurer will thereby satisfy its obligation to defend the insured against any claim, while at the same time exercising its contractual right to defend against covered claims for which its money is at risk. The insured will be assured of the loyalty of its counsel. Counsel will not have to wonder whether their client is the insurer or insured. We do not need to strip the insurer of its contractual right to defend covered claims because of a jaded view of an industry.[3]

While the court is correct in pointing out the potential for conflicts when multiple counsel cooperate in a single defense, such conflicts are not unique to insurance defense litigation. Problems of cooperation and strategy are present whenever there are multiple defendants. In this case there are two real parties in interest; the insurer for the covered claims, and the insured for the reserved claims. There is no reason to treat insurance defense litigation differently than other multiple defendant litigation.

I am disturbed that the court is willing to embrace a solution that abrogates entirely a contractual right. This is particularly so because the court rejects reasonable alternatives which would give some effect to the contractual provision. Neither case law nor reason provides more than token support for the court's solution. The court determines what it perceives to be the necessary result, apparently on the basis of its view of an industry. It reforms the contract accordingly. Contract law does not give a court such license. I would affirm the superior court.

---

**2.** Section X of the insurance contract provides in part:

> The Insured shall cooperate with the Corporation, and, upon the Corporation's request, shall attend hearings and trials and assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits.

**3.** This is not to say that there must be multiple counsel. The insurer may accept the insured's choice of counsel to represent its interests, or the insured may accept the insurer's choice of counsel to represent its interests. This would be a matter of choice, not contract.